# International Association of Fire Fighters, Local 669, Appellant *v.* City of Scranton, Appellee.

Argued June 7, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Thomas Jennings*, of Counsel: *Sagot* & *Jennings*, for appellant.

*Edmund J. Scacchitti*, City Solicitor, with him *John J. Brazil*, Assistant City Solicitor, for appellee.

OPINION BY JUDGE CRAIG, August 2, 1982:

Local Union No. 669 of the International Association of Fire Fighters, AFL-CIO, appeals a Lackawanna County Court of Common Pleas order, which vacated a portion of a labor arbitrator's award, involving an interpretation of a provision in the collective bargaining agreement between the union and the City of Scranton.[1] The court ruled that the arbitrator improperly ordered the city to maintain a minimum complement of 215 regularly appointed fire fighters.

The disputed[2] provision of the agreement is Article XVIII, Section 1, which provides in relevant part:

The City agrees with the Union that there shall be no arbitrary or capricious changes in job classifications, the transfers of personnel or reduction in force, or the creation of new job classifications....

The union asserted before the arbitrator that the city had violated this provision by reducing the

---

[1] The agreement was reached under the provisions of Act 111, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§217.1 to 217.10.

[2] Because the city has not appealed the affirmance of the arbitrator's determination regarding the positions of assistant master mechanic and deputy chief, that portion of the order is not before us on appeal.

number of fire fighters to under 215 persons, the work force level at the time the agreement became effective. The arbitrator agreed, and directed the city, "[t]o maintain a minimum level of bargaining unit members at 215 for a two-year period first commencing with the date on which the number of fire fighters is in fact returned to 215."

In its appeal to the common pleas court, the city asserted that the arbitrator should be reversed for failing to interpret the disputed provision as requiring a showing that the city's reduction in the work force was arbitrary and capricious.[3]

Although the common pleas court noted that the matter of maintaining a minimum work force was contained within the terms of the agreement, it relied upon our decision in *Scholastic Technical Service Employees v. Pennsylvania State University*, 37 Pa. Commonwealth Ct. 622, 391 A.2d 1097 (1978),[4] and

---

[3] In its brief, the city contends that the number of fire fighters is a managerial decision, not subject to review in arbitration, relying on our decision in *International Association of Fire Fighters v. City of Scranton*, 59 Pa. Commonwealth Ct. 235, 429 A.2d 779 (1981), where we held that the total number of fire fighters was within the scope of a municipality's managerial decision-making. However, in *Scranton School Board v. Scranton Federation of Teachers*, 27 Pa. Commonwealth Ct. 152, 365 A.2d 1339 (1976), we held that although an employer is not required to negotiate regarding matters of inherent managerial rights, he may voluntarily choose to do so. Here, the common pleas court concluded that the evidence was uncontradicted that the city had voluntarily chosen to negotiate the issue concerning the minimum number of fire fighters, thus supporting the arbitrator's similar finding.

[4] In *Scholastic Technical, Id.* at 625-626, 391 A.2d at 1099, we said:

> [I]n interpreting a collective bargaining agreement the arbitrator's task is to ascertain the intentions of the parties and this is a factual determination. An arbitrator's factual determination, like those of a jury, will not be disturbed if they are supported by the evidence, *i.e.*, by the language

concluded that the arbitrator's interpretation was unreasonable, stating:

> We do not believe that the arbitrator's interpretation as to the size of the bargaining unit is reasonable in view of the language of the relevant provision and the evidence presented to him. He could conclude from the "essence" of the agreement that the parties agreed to maintain a force of 215 in the bargaining unit, but he cannot ignore the clear language of the parties that an arbitrary and capricious reduction in force is required before that agreement is violated. There was no evidence that such was the case here. Without such evidence we cannot correct the award. Accordingly, that portion of the award must be set aside.

We must disagree.

Our decision in *Scholastic Technical*, which was based on our Supreme Court's decision in *Community College of Beaver County v. Society of Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977), must be viewed within the narrow limitations of judicial review expressed by our Supreme Court in *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981).

Under *Leechburg*, judicial review of an arbitrator's decision is limited by the "essence test," requiring "a determination as to whether the terms of the agree-

---

of the agreement, its context, and any other indicia of the parties' intentions.... If two conclusions can reasonably be drawn from the evidence, the conclusion of the factfinder will prevail.... If, however, the arbitrator's award cannot reasonably be derived from the agreement, viewed in the light of its language, its context and any other indicia of the parties' intention, Section 11(d) of the Arbitration Act [Act of April 25, 1927, P.L. 381, *as amended*, 5 P.S. §171] requires the reviewing court to "correct" the award. If the only way to correct the award is to set it aside, this is the appropriate remedy.

ment encompassed the subject matter of the dispute." *Id.* at 521, 424 A.2d at 1312. A court's inquiry ends "once it is determined that the issue properly defined is within the terms of the agreement." *Id.* at 521, 424 A.2d at 1313.

Given the key point that maintenance of minimum work force is within the term of Article XVIII, Section 1 of the agreement, judicial exegesis of the modifiers in that section is barred. Although the common pleas court understandably concluded that the language of this section lends itself to the alternative interpretation, our Supreme Court, in *Leechburg*, has made clear that it looks unfavorably upon interference by the judiciary, even where the court could reasonably adopt a different interpretation.[5] This limited standard of review reflects the desire of our Supreme Court to treat an arbitrator as a "court of last resort,"[6] and a recognition that, in construing particular language, an arbitrator, as here, may rely on additional evidence, derived from the history of the bargaining.[7]

---

[5] In *Leechburg*, the court displayed its reluctance to interfere with an arbitrator's award even where the arbitrator may have erroneously interpreted an agreement:

> The fact that [an] arbitrator in analyzing [a] dispute may have failed to properly perceive the question presented or erroneously resolved it, does not provide justification for judicial interference. Our inquiry ends once it is determined that the issue properly defined is within the terms of the agreement.

*Id.* at 521, 424 A.2d at 1313.

[6] *Leechburg Area School Dist. v. Leechburg Educ. Ass'n.*, 475 Pa. 413, 418, 380 A.2d 1203, 1205 (1977).

[7] *See Ass'n of Pennsylvania State Colleges v. Commonwealth*, Pa. , , 436 A.2d 987, 988 (1981) ("[A] collective bargaining agreement may encompass more than what has been reduced to writing."). Here the arbitrator relied on more than the language of Article XVII, Section 1 of the agreement. In his opinion, the arbitrator said:

> However, my conclusion that the City of Scranton is obliged to have 215 fire fighters is based on the undisputed

Accordingly, that portion of the decision of the court of common pleas concerning the minimum work force is hereby reversed.

## ORDER

Now, August 2, 1982, the order of the Court of Common Pleas of Lackawanna County dated April 9, 1981, vacating that portion of the award of the arbitrator that directed the City of Scranton to maintain a minimum number of 215 fire fighters, is reversed, and the arbitrator's award is hereby reinstated.

-------

facts before me that a bona fide agreement was reached between the parties to that effect. The quid pro quo for this commitment was the Union's relaxation of its demand for full wage parity with the police. The facts clearly indicate that the agreement for 215 fire fighter positions was one of the basic foundations upon which all negotations took place and upon which the entire contract rested. I deem this to be valid consideration between the Union and the fully authorized City agents and representatives.