547 A.2d 465

Independent State Store Union, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Argued April 18, 1988, before Judges MacPhail and Doyle, and Senior Judge Narick, sitting as a panel of three.

*John D. Killian, Killian & Gephart,* for petitioner.

*Arlene F. Klinedinst,* with her, *James L. Crawford,* for respondent.

*Cheryl G. Young,* Assistant Counsel, for intervenor, Office of Administration and Office of the Budget.

OPINION BY JUDGE DOYLE, September 7, 1988:

The Independent State Store Union (ISSU) petitions for review of an order of the Pennsylvania Labor Relations Board (Board) which found that the Pennsylvania Liquor Control Board (PLCB) had not violated Sections 1201(a)(1), 1201(a)(5), and 1201(a)(9) of the Public Employe Relations Act (PERA)[1] in refusing to process the grievance of Lawrence W. Sweeney, Jr. (Grievant) to the fifth step of the grievance procedure contained in a "Memorandum of Understanding" (Memorandum) between the PLCB and the ISSU. We affirm.

The ISSU is the public employee labor organization representing first-level supervisors employed by the PLCB. Following a series of "meet and discuss" sessions between the PLCB and the ISSU, the parties entered into the Memorandum, which covered the period from

---

[1] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§1101.1201(a)(1), 1101.1201(a)(5), 1101.1201(a)(9).

August 1, 1983 to June 30, 1985. The Memorandum provided in relevant part that the PLCB would not discriminate on the basis of race (Recommendation Number 18), would not demote or dismiss an employee represented by the ISSU without just cause (Recommendation Number 15) and that the PLCB would follow a five-step grievance procedure for resolving any disputes over discipline (Recommendation No. 17). The fifth step of the grievance procedure allowed for the selection of an outside arbitrator to decide the grievance.

The Grievant here, a black male, was employed by the PLCB as a General Manager IIA at a PLCB store in York, Pennsylvania. On January 14, 1985, he sent a letter to the PLCB's affirmative action officer claiming he was being harassed by his supervisor who was white. On February 15, 1985, Grievant was notified by the PLCB that his supervisor had recommended he be demoted due to two incidents of rudeness to customers, abusive language to fellow employees, and his failure to transfer store merchandise to another PLCB store. The PLCB demoted him to Clerk I on February 21, 1985, effective March 9, 1985, and warned him that any future incompetence or misconduct would result in his dismissal. The letter notifying Grievant of his demotion also informed Grievant that he could challenge the demotion by either appealing to the Civil Service Commission or by utilizing the grievance procedure contained in the Memorandum. Also, on February 21, 1985, Grievant again wrote to the PLCB's affirmative action officer complaining of harassment by his supervisor.

Claimant then invoked the Memorandum's grievance procedure and proceeded through the first three steps which included at least one "meet and discuss" session between the representatives of the ISSU and the PLCB. The grievance was denied at each step. Shortly after the PLCB denied the grievance at the

third step, Grievant *voluntarily retired* from the PLCB. Another meeting was held, pursuant to the fourth step of the grievance procedure, between the ISSU and PLCB representatives. Thereafter, the PLCB denied the grievance on the basis that "grievant's retirement action . . . rendered the demotion dispute moot."[2] The ISSU then asked for the appointment of a grievance arbitrator pursuant to step five of Recommendation 17. PLCB, however, refused to arbitrate.

Consequently, the ISSU filed unfair labor practice charges with the Board alleging that the PLCB had violated Sections 1201(a)(1), 1201(a)(5), and 1201(a)(9) of PERA. The hearing examiner found that since the Memorandum was neither a collective bargaining agreement nor a contract, the ISSU could not compel the PLCB to arbitrate the grievance. The Board agreed with the hearing examiner's decision. This appeal followed.[3]

---

[2] Assuming without deciding that this case is moot, we believe the issues here are capable of repetition yet evading review, *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 104 Pa. Commonwealth Ct. 21, 521 A.2d 75 (1987), and of sufficient public importance so as to justify our review of the merits of the case. *Zemprelli v. Thornburgh*, 55 Pa. Commonwealth Ct. 330, 423 A.2d 1072 (1980).

[3] Our scope of review over unfair labor practice decisions of the Pennsylvania Labor Relations Board is limited to determining whether constitutional rights or the provisions of 2 Pa. C. S. §§501-508 have been violated, an error of law has been committed, and whether the Board's essential findings of fact are unsupported by substantial evidence. 2 Pa. C. S. §704; *Harbaugh v. Pennsylvania Labor Relations Board*, 107 Pa. Commonwealth Ct. 406, 528 A.2d 1024 (1987). Where, as here, the parties agree that no factual dispute is present, we need only review the Board's legal conclusions. *McAdoo Borough v. Pennsylvania Labor Relations Board*, 79 Pa. Commonwealth Ct. 158, 469 A.2d 693 (1983), *rev'd on other grounds*, 506 Pa. 422, 485 A.2d 761 (1984).

The duties placed upon the PLCB with regard to its first-level supervisory employees are delineated in Section 704 of PERA, which states:

Public employers shall not be required to bargain with units of first level supervisors or their representatives but shall be required to meet and discuss with first level supervisors or their representatives, on matters deemed to be bargainable for other public employes covered by this act.

43 P.S. §1101.704. Section 301(17) of PERA, 43 P.S. §1101.301(17), defines the concept of "meet and discuss" as "the obligation of a public employer upon request to meet at reasonable times and discuss recommendations submitted by representatives of public employes: Provided, That any decisions or determinations on matters so discussed shall remain with the public employer and be deemed final on any issue or issues raised." Meet and discuss sessions exist as a device to permit input or recommendations from public employees on policy matters affecting wages, hours and terms and conditions of employment so as to assist the public employer in ultimately making its disposition of the issues in question. *Pennsylvania Labor Relations Board v. Association of Pennsylvania State College and University Faculties/Pennsylvania Association of Higher Education (APSCUF/PAHE)*, 24 Pa. Commonwealth Ct. 337, 355 A.2d 853 (1976).

ISSU's first assertion is that PLCB is estopped from opting out of the grievance procedure contained in the Memorandum. We disagree. ISSU argues that since the Memorandum establishes collective bargaining agreement-like procedures, *i.e.*, procedures akin to grievance arbitration, a PLCB employee represented by the ISSU has the same rights under the Memorandum as if the ISSU and the PLCB had a collective bargaining agree-

ment. This is incorrect, however, because the very terms of the Memorandum state:

It is understood that this Memorandum and the recommendations contained herein are implemented in whole or in part, do not and shall not constitute a collective bargaining agreement or contract binding upon the parties, but shall represent a meet and discuss understanding and Memorandum of Recommendation . . .

Thus, the Memorandum makes it explicit that the PLCB did not intend to be legally bound in any manner by the Memorandum. This evidences an intent by the PLCB to retain all rights it may have under Section 704. This conclusion is in accord with our decisions in *Pennsylvania Liquor Control Board v. Clark*, 97 Pa. Commonwealth Ct. 320, 509 A.2d 928 (1986) and *Shaffer v. Pennsylvania Liquor Control Board*, 92 Pa. Commonwealth Ct. 374, 500 A.2d 917 (1985). In both *Clark* and *Shaffer*, the issue was whether the respective PLCB memoranda of understanding at issue in those cases, which contained language identical to this Memorandum, were collective bargaining agreements or contracts or agreements to arbitrate, since if the memoranda were any of these types of legally binding agreements, the Board of claims would have had no jurisdiction to decide either case. We held in both cases that the memoranda were none of the aforementioned types of legal agreements. *Clark; Shaffer.*

We also find precedent in our Supreme Court's recent decision in *Pennsylvania Labor Relations Board v. Della Vecchia*, 517 Pa. 348, 537 A.2d 805 (1988). In *Della Vecchia*, the Allegheny County Recorder of Deeds entered into a "Memorandum of Understanding" with the Service Employees International Union (SEIU), even though the Recorder of Deeds was not a public employer under PERA. The Recorder laid off

three employees for what it deemed to be economic reasons, and SEIU filed a grievance under the terms of that memorandum of understanding. The Recorder refused to arbitrate the grievance. The Board found the Recorder's refusal to arbitrate an unfair labor practice. The Supreme Court reversed the Board's determination. First, it noted that the memorandum was a thinly-veiled attempt to obtain for the Recorder's employees collective bargaining rights. *Id.* at 351 n.1, 537 A.2d at 806 n.1. Similarly, the relief sought here by ISSU is that generally associated with collective bargaining agreements, not a meet and discuss situation. Further, the Supreme Court held in *Della Vecchia* that the estoppel argument urged by SEIU, while having some equitable appeal, was contrary to the intent and purposes of PERA, and would allow "the jurisdictional status of the PLRB to be conferred upon any Collective Bargaining document solely by agreement of the parties involved and would render the provisions of the PERA a nullity." *Id.* at 353, 537 A.2d at 807. Here, the fact that PLCB and ISSU have come to a written understanding that certain procedures will be recommended to PLCB for adoption does not make this written "meet and discuss" understanding a collective bargaining agreement or necessarily give a PLCB first-level supervisory employee the same rights he would have under a collective bargaining agreement. Indeed, to the extent ISSU's unfair labor practice charges are based on PLCB's failure to arbitrate Grievant's claim under the Memorandum, the Board is without jurisdiction to consider the matter since those charges do not fall within any of the unfair labor practices found in PERA. *Ziccardi v. Department of General Services, Bureau of Building and Grounds,* 500 Pa. 326, 456 A.2d 979 (1982); *Professional and Public Service Employees Union Local 1300 v. Trinisewski,* 94 Pa. Commonwealth Ct. 462, 504 A.2d 391 (1986).

Even though the Memorandum does not create any legally binding obligation to submit employee grievances to a grievance arbitration procedure, the Memorandum is not without worth as the ISSU vigorously contends. The immediate function of the Memorandum is to *assist* the PLCB in resolving disputes. *Clark.* However, the wider function of the Memorandum is to foster labor peace between public employers and their employees. The passage of PERA was due in part to the fact that prior public employee labor laws did not require public employers to bargain collectively with their employees, and this fact created ill will and friction between public employers and employees, which led to numerous strikes. *See Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975). Although PERA does not allow first-level supervisory employees of public employers to bargain collectively, it does grant them the right to "meet and discuss" with their employers issues which would be bargainable for other employees. The Memorandum here represents a memorialization of the views arrived at by the public employee labor organization and the public employer after discussion as to what would be sound policy for the employer to adopt with respect to issues affecting first-level supervisory employees. This is so despite the fact that the public employer is not bound to accept the proposal contained in the Memorandum, and the public employee union has no right to insist the public employer implement such proposals. *See Independent Association of Pennsylvania Liquor Control Board Employees v. Commonwealth,* 35 Pa. Commonwealth Ct. 133, 384 A.2d 1367 (1978). Memoranda of understanding are viable, not because such documents are legally binding upon the public employer, since they are not, *id.,* but because the public employer makes a good-faith effort to resolve matters

affecting the public employer's first-level supervisory employees in a manner agreeable to such employees.

One reason a public employer may wish to establish a grievance arbitration procedure, even though not bound to do so, is because the process of grievance arbitration has a cathartic value in that it provides a safety valve for the ventilation of issues which might otherwise cause employee unrest. *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978). This court specifically notes that the PLCB has submitted other employee grievances to arbitration. *See Pennsylvania Liquor Control Board v. Independent State Stores Union,* 100 Pa. Commonwealth Ct. 272, 514 A.2d 959 (1986). Here, a good faith dispute arose over whether Grievant's retirement from the PLCB mooted the necessity for the arbitration process. Since under PERA and the Memorandum, PLCB was not bound to implement, in whole or in part, the grievance procedure in this case, and because the ultimate decision-making power remained with it, there can be no estoppel. Once, however, PLCB does submit an employee grievance to arbitration, it is bound by the arbitrator's decision, the award being subject only to judicial review under the "essence test" standard. *Independent State Stores Union.*[4]

The ISSU's next argument is that the PLCB's refusal to arbitrate constituted an unfair labor practice under Section 1201(a)(3) of PERA. The general rule is that

---

[4] ISSU also argues that PLCB should be estopped from denying the enforceability of the Memorandum on the theory that the present case is similar to one where courts have held employers to policy declarations contained in employee personnel manuals. *See, i.e., Woolley v. Hoffman-LaRoche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985), *modified at,* 101 N. J. 10, 499 A.2d 515 (1985). *See also Banas v. Matthews International Corp.,* 348 Pa. Superior Ct. 464, 502 A.2d 637 (1985). This theory was not, however, raised to the Board and is waived. Pa. R.A.P. 1551.

whether a grievance is arbitrable in an issue for the arbitrator in the first instance. *Scranton Federation of Teachers v. Scranton School District,* 498 Pa. 58, 444 A.2d 1144 (1982); *Pennsylvania Labor Relations Board v. Greater Johnstown Area Vocational Technical School,* 48 Pa. Commonwealth Ct. 604, 410 A.2d 1290 (1980). This rule must be read, however, in conjunction with Section 903 of PERA, 43 P.S. §1101.903, which states that mandatory arbitration of grievances is mandated when the grievances arise out of the interpretation of a *collective bargaining agreement.* ISSU argues that because the Memorandum was the product of meet and discuss sessions, it must have the same rights under it, and that any recommendations contained therein are binding because they are a result of the "meet and discuss" meetings. In support of this argument, ISSU cites *Pennsylvania Labor Relations Board v. Della Vecchia,* 90 Pa. Commonwealth Ct. 235, 494 A.2d 1151 (1985), *rev'd,* 517 Pa. 348, 537 A.2d 805 (1988); *International Association of Firefighters v. City of Scranton,* 68 Pa. Commonwealth Ct. 105, 448 A.2d 114 (1982), and *Scranton School Board v. Scranton Federation of Teachers,* 27 Pa. Commonwealth Ct. 152, 365 A.2d 1339 (1976). First, this court's decision in *Della Vecchia* was reversed by our Supreme Court, which held that a public entity which is not a public employer under PERA cannot be estopped into granting its employees collective bargaining rights. More importantly, both *International Association of Firefighters* and *Scranton School Board* stand for the proposition that while a public employer does not *have to* bargain over issues of inherent managerial prerogative, if it chooses to do so, it is bound. *Scranton School Board.* Here by contrast, the only rights granted to PLCB first-level supervisors under Section 704 of PERA are "meet and discuss rights," with the ultimate decision making power remaining

with the public employer. *See* Section 301(17) of PERA. Nothing in the Memorandum binds PLCB to implement, in whole or in part, any of the procedures contained therein. *Independent Association of Pennsylvania Liquor Control Board Employees.* Since ISSU's assertions that the PLCB violated Section 1201(a)(1), 1201(a)(5) and 1201(a)(9) of PERA are premised on the PLCB's alleged duty to arbitrate, these contentions are meritless. PLCB met and discussed Grievant's grievance with ISSU on at least two occasions. Therefore, PLCB satisfied any obligation it had to meet and discuss the grievance, as ISSU does not argue that the Commonwealth met and discussed the grievance in bad faith.

Affirmed.

## ORDER

Now, September 7, 1988, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is hereby affirmed.