549 A.2d 240

Commonwealth of Pennsylvania, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

*John D. Raup,* Chief Counsel, with him, *Frank A. Fisher, Jr.,* Deputy Chief Counsel, for petitioner.

*James L. Crawford,* for respondent.

*Stuart W. Davidson, Kirschner, Walters & Willig,* for intervenor, AFSCME Council 13.

OPINION BY JUDGE DOYLE, October 12, 1988:

The Commonwealth of Pennsylvania (Commonwealth) petitions for review of an order of the Pennsylvania Labor Relations Board (Board) finding that the Commonwealth had violated Section 1201(a)(5) of the Public Employee Relation Act (PERA)[1] by refusing to enter into binding interest arbitration with the American Federation of State, County and Municipal Employees, Council 13 (AFSCME) over certain issues the Commonwealth deemed to be matters of inherent managerial prerogative.

The Commonwealth and AFSCME were parties to a collective bargaining agreement concerning the employment of corrections officers and psychiatric security aides. The agreement was scheduled to expire on June 30, 1985. In May, 1984, the parties began negotiating for a new collective bargaining agreement. Included among AFSCME's initial and supplemental list of demands were issues the Commonwealth deemed to be matters of inherent managerial prerogative.[2] On May 28, 1985, AFSCME wrote a letter to then Governor Thornburgh declaring that the negotiations between the parties were at an impasse and requesting binding in-

---

[1] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1201(a)(5).

[2] The issues over which the Commonwealth refused to bargain were: (1) performance evaluations; (2) use of telephones; (3) binding arbitration for classification grievances; (4) work assignments; (5) the patient/staff ratio joint committee; (6) uniform requirement; (7) insurance and medical benefits to persons already retired; (8) part-time or temporary positions.

terest arbitration. The Commonwealth responded to AFSCME by letter of June 29, 1985 stating that:

> This is in response to your letter to Governor Thornburgh dated May 28, 1985 regarding your demand to proceed directly to binding interest arbitration for the Correction Officers/Psychiatric Security Aides unit.
>
> The proposal submitted by AFSCME contains several demands which the Commonwealth believes are not mandatory subjects of bargaining under Section 702 of Act 195. Your negotiators have been advised of the Commonwealth's position regarding these specific demands. However, as of this date, the specific demands which the Commonwealth believes are not mandatory subjects of bargaining are still on the table and it is our understanding that AFSCME intends to present these demands to the interest arbitration panel.
>
> Please be advised that it is our position that an interest arbitration panel has no authority to review or rule on matters which are not mandatory subjects of bargaining. In addition, the panel cannot decide if a particular item is or is not a mandatory subject of bargaining.
>
> Therefore, the Commonwealth will not appoint an arbitrator until the issues noted above have been resolved.

As a result of this response, AFSCME filed an unfair labor practice charge with the Board on June 21, 1985 concerning the Commonwealth's refusal to arbitrate. A week later the parties agreed to submit to arbitration all issues the Commonwealth deemed not to be matters of inherent managerial prerogative. The Commonwealth still refused, however, to arbitrate those issues it believed to be non-mandatory subjects of bargaining.

While the issues that both the Commonwealth and AFSCME agreed were the proper subjects of bargaining were before the arbitration panel, the question of whether the other eight issues were the proper subjects of bargaining under Section 701 of PERA, 43 P.S. §1101.701, or were matters of inherent managerial policy not subject to bargaining under Section 702, 43 P.S. §1101.702, was first adjudicated by a hearing examiner on behalf of the Board. The hearing examiner framed the issue thusly:

> This case presents a procedural question: whether the Board or the interest arbitration panel convened under Section 805 of the Act [PERA] should determine whether a particular bargaining demand is subject to arbitration by the interest arbitration panel.

The hearing examiner then found that the Commonwealth had committed an unfair labor practice. The Board upheld the hearing examiner's finding of an unfair labor practice on the rationale that the Commonwealth's refusal to submit the disputed issues to arbitration would allegedly violate one of the policies underlying Section 805 of PERA, 43 P.S. §1101.805, that is, the prompt resolution of public sector labor disputes. Moreover, the Board stated that the Commonwealth would not be harmed by first submitting the disputed issues to arbitration since the Commonwealth could appeal any award entered. This appeal followed.[3]

---

[3] Our scope of review over unfair labor practice decisions of the Pennsylvania Labor Relations Board is limited to determining whether constitutional rights or the provisions of 2 Pa. C. S. §§501-508 have been violated, an error of law has been committed, and whether the Board's essential findings of fact are unsupported by substantial evidence. 2 Pa. C. S. §704; *Harbaugh v. Pennsylvania Labor Relations Board,* 107 Pa. Commonwealth Ct. 406, 528 A.2d 1024 (1987).

The Commonwealth argues that it does not have to submit to binding *interest* arbitration, under Section 805 of PERA, issues it deems to be matters of inherent managerial prerogative. We are constrained to agree. Section 701 of PERA, 43 P.S. §1101.701, is broad as to what matters may be the subject of collective bargaining. It provides:

### §701 Matters subject to bargaining

Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

The right of collective bargaining granted by Section 701 is limited, however, by Section 702 of PERA, 43 P.S. §1101.702, which states:

### §702 Matters not subject to bargaining

Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

These two Sections outline the basic parameters under which collective bargaining is conducted under PERA. Our Supreme Court and this Court have consistently held that a public employer does not commit an unfair labor practice under PERA when it refuses to bargain over items which are matters of inherent managerial policy. *Joint Bargaining Committee of the Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board,* 503 Pa. 236, 469 A.2d 150 (1983); *Chambersburg Area School District v. Pennsylvania Labor Relations Board,* 60 Pa. Commonwealth Ct. 29, 430 A.2d 740 (1981); *Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board,* 15 Pa. Commonwealth Ct. 441, 325 A.2d 659 (1974).

Sections 801 through 806 of PERA, 43 P.S. §§1101.801-1101.806, deal with the procedures to be followed when collective bargaining negotiations reach impasse for parties covered by PERA. Section 805 requires that for certain groups of specified employees, including the correction officers and psychiatric security aides represented by AFSCME, as in this case, any bargaining impasse will be submitted to binding arbitration. It provides:

**§805 Guards and court personnel; binding arbitration**

Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in Section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions

of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

It should be noted that neither Section 805 in particular, nor the provisions of Sections 801-806 in general, contain language which would vary the basic bargaining parameters found in Sections 701 and 702 of PERA.

In resolving this perplexing problem for which PERA provides no template, several alternatives should be considered. If a public employer believes a bargaining item to be one of inherent managerial policy, hence, non-bargainable, either of the two following courses of action could occur. First, the public employer could *refuse* to bargain over the item. If this occurs, the public employee union is presented with two options: it could accede to the public employer's decision in which case it would meet-and-discuss with the public employer concerning the matter; or, if the public employer did not relent, it could file a refusal-to-bargain unfair labor practice charge with the Board. If this second route were to be followed, the Board would then determine whether the item was or was not one of inherent managerial policy and the matter would be settled. Second, if the public employer did not absolutely refuse to discuss the issue, it could proceed with Section 805 interest arbitration but without a threshold resolution of the issue, and the question of whether or not the issue was one of inherent managerial policy could then be raised in the first instance before the arbitration panel; if the arbitrator's decision were adverse to the public employer, the issue could subsequently be addressed in an appeal from the award, or, it could possibly be raised as a defense to a later mandamus action brought by the public employee union to enforce the award. *See Chirico v. Board of Supervisors for Newton Township,* 504 Pa. 71, 470 A.2d 470 (1983). The issue might also be raised as a

defense if the public employer chose not to implement the award and the union filed an unfair labor practice charge with the Board. *See Franklin County Prison Board v. Pennsylvania Labor Relations Board*, 491 Pa. 50, 417 A.2d 1138 (1980). These are the overall alternatives.

The Board, in resolving the case *sub judice*, held that the policy underlying Section 805 is that the employees covered by this Section have a right to submit the impasse to arbitration for prompt disposition. While the underlying policy may be the prompt resolution of impasses, there can be, of course, no impasse in collective bargaining on issues over which the Commonwealth is not required to bargain. In other words, under PERA, only matters that *are* bargainable may be submitted to interest arbitration, unless the public employer consents to the submission of the non-bargainable matters. Further, the Board's reliance on the policy underlying Section 805 in this instance would deprive the Commonwealth of its prerogative not to have matters of inherent managerial policy subject to collective bargaining under Section 702 of PERA; this is a prerogative which the Commonwealth cannot be deprived of unless the legislative intent to do so is clear, which is not the situation here. *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975); *Hoffman v. Pittsburgh*, 365 Pa. 386, 75 A.2d 649 (1950). Succinctly, we believe a more prompt resolution of the issue would come about by having the Board address and resolve the question first, *before* it is submitted to arbitration. And, any appeal to this Court from the Board's determination could always receive expedited consideration.

The Board's first argument in support of its decision is that the Commonwealth's refusal to arbitrate the disputed issues constitutes a violation of Sections 1201(a)(1)

and 1201(a)(5) of PERA. In support of this argument, the Board cites *Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 499 Pa. 62, 451 A.2d 671 (1982); *East Pennsboro Area School District v. Pennsylvania Labor Relations Board*, 78 Pa. Commonwealth Ct. 301, 467 A.2d 1356 (1983), and *Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board*, 30 Pa. Commonwealth Ct. 403, 373 A.2d 1175 (1977). Both *Bald Eagle* and *East Pennsboro* involved the arbitration of grievances. The legislative policy favoring arbitration of grievances is very clear, as Section 903 of PERA, 43 P.S. §1101.903, provides that "[a]rbitration disputes or of grievances arising out of the interpretation of the provision of a collective bargaining agreement is mandatory." This is true even where the public employer's defense to the grievance is that the subject matter of the grievance involves matters of inherent managerial policy. *Id.* Likewise, *Association of Pennsylvania State College and University Faculties* also involved a grievance, (although the collective bargaining agreement in that case specifically allowed interest arbitration and the union's attempted invocation of the interest arbitration provision led to the dispute between the parties). Although we note that our Supreme Court stated in *Franklin County Prison Board* that the rationale and policies underlying Section 903 of PERA are equally salient in the Section 805 interest arbitration context, that case did not involve the question of whether nonbargainable issues should be submitted to an interest arbitration panel.[4] Since the basic general question here, whether the Commonwealth committed an unfair

---

[4] The issue in *Franklin County Prison Board* was whether the prison board committed an unfair labor practice in refusing to implement an interest arbitration award the county deemed advisory.

labor practice in the first instance by refusing to arbitrate the disputed issue of inherent managerial policy, turns on whether the Commonwealth had a duty to bargain over those issues at all, we do not believe *Franklin County Prison Board* to be entirely on point.

The Board next attempts to analogize the present controversy to those situations involving employees covered by what is colloquially known as Act 111[5] where interest arbitration awards may deal "with proper terms and conditions of employment." *Cheltenham Township v. Cheltenham Township Police Department,* 11 Pa. Commonwealth Ct. 348, 352, 312 A.2d 835, 837 (1973) (quoting the *Washington Arbitration Case,* 436 Pa. 168, 177, 259 A.2d 437, 442 (1969)). The Board argues that when in *Commonwealth v. State Conference of State Police Lodges of the Fraternal Order of Police,* 513 Pa. 285, 520 A.2d 25 (1987), our Supreme Court stated "[w]e have consistently held that arbitration panels are empowered to award any terms or conditions of employment to which a public employer and its police employees might have voluntarily agreed," *id.* at 289, 520 A.2d at 28, our Supreme Court "rejected the argument that an Act 111 arbitration panel cannot hear and decide questions of management prerogative which arise in the context of an interest arbitration."

We believe, however, that the analogy between employees covered by Act 111 and those covered by the binding arbitration provisions of PERA is inappropriate. Act 111 was passed in 1968 because of strikes called by police and fire personnel across the Commonwealth.[6] It conferred not only the right to bargain collectively, but, in the event of a bargaining impasse, the right to submit

---

[5] Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.10.

[6] Under the Act of July 30, 1947, P.L. 1183, 43 P.S. §§215.1-215.5, *repealed in part* by Section 2201 of PERA, 43 P.S. §1101.2201, strikes by public employees were illegal.

the dispute to compulsory and binding arbitration. *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board*, 470 Pa. 550, 369 A.2d 259 (1977). The legislature gave police and firemen the right to submit bargaining disputes to binding arbitration in place of the right to strike,[7] due to the crucial services performed by these employees, *Township of Moon v. Police Officers of the Township of Moon*, 508 Pa. 495, 498 A.2d 1305 (1985), and made no distinction between bargainable and non-bargainable issues. Indeed, Act 111's trim guidelines are so basic that our Supreme Court has held that in order to flesh out the details of labor relations under Act 111, it must be read *in para materia* with and within certain limits, construed in accordance with the Pennsylvania Labor Relations Act[8] (PLRA) which established the right of collective bargaining among private employers and employees in Pennsylvania. *State Conference of State Police; Philadelphia Fire Officers.*

PERA is different from Act 111 in terms of both structure and completeness and contains many provisions not found in Act 111,[9] with perhaps the most rele-

---

[7] The policy favoring arbitration is a strong one. Article III, Section 31 of the Pennsylvania Constitution, after its amendment in 1967, clearly provides for Act 111, and the express terms of Section 7 of Act 111, 43 P.S. §217.7, state that "[n]o appeal [from an Act 111 interest arbitration award] shall be allowed to any court."

[8] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§211.1-211.13.

[9] For example, PERA contains specific provisions regarding the following: (1) recognition of the employee's collective bargaining representative, *see* Section 602 of PERA, 43 P.S. §1101.602; (2) the election of the bargaining representative, *see* Sections 603 and 605 of PERA, 43 P.S. §§1101.603, 1101.605; (3) the appropriateness of the bargaining unit, *see* Section 604 of PERA, 43 P.S. §1101.604; (4) mediation of public employee labor disputes, Sections 801 and 802 of PERA, 43 P.S. §§1101.801, 1101.802; (5) mandatory and

vant being Section 702 of PERA which makes matters of inherent managerial policy not subject to bargaining. Merely because matters of inherent managerial policy may be submitted to an Act 111 arbitration panel does not necessarily mean that those same matters may be submitted to a PERA arbitration panel, because PERA specifically exempts such matters from bargaining, while Act 111 does not.

Further, we do not agree with the Board's conclu-. sion that *State Conference of State Police* broadened the scope of bargaining in interest arbitration. In *State Conference of State Police* our Supreme Court reading Section 6(1)(c) of PLRA, 43 P.S. §211.6(1)(c), and Act 111 *in para materia* held that the issue of an "agency shop" was a permissible subject of bargaining under Act 111. The Court did not indicate, however, that it had expanded the scope of collective bargaining permissible under Act 111.

Last, the Board urges a number of policy reasons as to why an arbitration panel should initially decide whether the disputed issues concern matters of inherent managerial policy. First, the Board notes that arbitrators have in the past decided whether particular employer actions or policies concern matters of inherent managerial policy.[10] *See, e.g., American Federation of State,*

---

binding arbitration of grievances, *see* Section 903 of PERA, 43 P.S. §1101.903; (6) the public employer's duty to meet-and-discuss issues with first level supervisors, *see* Section 704 of PERA, 43 P.S. §1101.704.

[10] The Board interprets the Commonwealth's position to be that once a public employer refuses to bargain over an issue it deems to be a matter of inherent managerial policy, either party could approach the Board for a decision akin to a declaratory judgment as to whether the issue is bargainable or not. As we understand the Commonwealth's position, however, once the public employer refuses to bargain over a matter it deems to be one of inherent managerial policy, the public employee representative has two

*County and Municipal Employees v. Borough of Schuyl-
kill Haven,* 94 Pa. Commonwealth Ct. 555, 504 A.2d
395 (1986); *Scranton School Board v. Scranton Federa-
tion of Teachers, Local 1147,* 27 Pa. Commonwealth Ct.
152, 365 A.2d 1339 (1976). Second, the Board contends
that it would be difficult to determine whether an issue
is a matter of inherent managerial policy prior to an
award due to the parties' often "artless framing of the
issues." *State College Area School District.* In support
of this contention the Board cites the following passage
from *Joint Bargaining Committee* where Justice MC-
DERMOTT stated:

> We do not hold in this case that caseload is
> always a managerial prerogative. In some factual
> settings caseload might indeed be a mandatory
> subject of bargaining, as the impact of unbridled
> discretion over caseload assignment on an em-
> ployee's interest in wages, hours and terms and
> conditions of employment might outweigh the
> impact on the basic policy of the system as a
> whole.

*Id.* at 244, 469 A.2d at 154 (footnote omitted). Third,
the Board contends that the Commonwealth's rights are
protected because it can always appeal the final arbitra-
tion award.

We do not doubt that arbitrators are *competent* to
decide whether certain items are matters of inherent
managerial policy. But that is not the question. This
case turns on whether the Commonwealth can be com-

---

options. It can either accede to the public employer's decision and
meet and discuss over the matter pursuant to Section 702 of PERA,
or, it can file a refusal-to-bargain unfair labor practice charge with
the Board. While the Board may have no statutory power to issue
declaratory judgments, it does have exclusive jurisdiction over un-
fair labor practice charges. *See Hollinger v. Department of Public
Welfare,* 469 Pa. 358, 366, 365 A.2d 1245, 1249 (1976).

pelled to engage in interest arbitration on issues it deems to be matters of inherent managerial policy and, therefore, non-bargainable; it does not turn on the issue of the competency of arbitrators.

As to the Board's contention that it would be difficult to determine whether a matter is one of inherent managerial policy or not prior to an interest arbitration award, we are unpersuaded by this argument and believe that the question, for purposes of expediency, should be determined prior to interest arbitration. While we are cognizant of the fact that the issue is dependent upon the facts and circumstances of a particular collective bargaining situation, the statutory scheme of PERA leads us to conclude that it be done prior to an interest arbitration. If the question of whether an issue falls within the purview of Section 702 of PERA is not determined prior to interest arbitration, the public employer is put in the position of making no counter proposal at all to the union's proposal (hoping either the arbitration panel or a court recognizes the issue to be one of inherent managerial policy later) thereby delaying the process, or, of bargaining over the issue and losing the rights granted to it by Section 702. *See Scranton School Board.*

Finally, we think that the Commonwealth's right to appeal the interest arbitration award, especially given our narrow scope of review under the "essence" test, is a poor substitute for its right to have a Board decision concerning the matter reviewed by this court under the standard contained in Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.[11]

Reversed.

---

[11] *See supra* footnote 2.

ORDER

Now, October 12, 1988, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is hereby reversed, and the matter is remanded to the Board for a determination of which items are matters of inherent managerial policy and nonbargainable.

Jurisdiction relinquished.

Judge SMITH dissents.

This decision was reached prior to the resignation of Judge MACPHAIL.