634 A.2d 830

**POLICE BARGAINING UNIT OF the BOROUGH OF MONTOURSVILLE POLICE DEPARTMENT, Appellant,**

v.

**The BOROUGH OF MONTOURSVILLE, Appellee.**

Commonwealth Court of Pennsylvania.

Argued April 10, 1992.

Decided Dec. 1, 1993.

334

James L. McAneny, for appellant.

Brett O. Feese, for appellee.

Before DOYLE and FRIEDMAN, JJ., and LORD, Senior Judge.

DOYLE, Judge.

The Police Bargaining Unit of the Borough of Montoursville (Union) appeals an order of the Court of Common Pleas of Lycoming County affirming in part and reversing in part the award of an arbitrator under Act 111.[1]

The Union and the Borough of Montoursville entered into a collective bargaining agreement effective January 1, 1988, through December 31, 1990. The agreement included, among other provisions, articles concerning work schedules and minimum force requirements. Article II.A, entitled "Hours of Work–Work Schedules," provided that it would be the duty of the chief of police to prepare the weekly duty schedule. Article XIII, entitled "Required Strengths," provided that the Police Department would be maintained at a strength of five full-time officers, to be supplemented by part-time officers as needed.

Negotiations for a new contract, to begin on January 1, 1991, resulted in an impasse and the Union advised the Borough of its intention to proceed with binding arbitration. Among numerous issues in dispute submitted to the panel of arbitrators was the Borough's contention that Articles II.A

1. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10. (Act 111).

and XIII of the 1988–90 contract were contrary to law and not arbitrable issues under Act 111.

On December 26, 1990, the arbitrators issued a decision which, *inter alia,* ordered that an amended version of Article II.A be included in the new contract and that Article XIII be included without amendment.[2] The Borough filed a petition for review of the award with the trial court, arguing that the subject matter of the contested articles was not arbitrable under Act 111 and thus the arbitrators exceeded their authority under Act 111. Specifically, the Borough argued that inclusion of Article II.A would require it to perform an act contrary to the Section 1121 of the Borough Code (Code),[3] which generally places the mayor of a borough in charge of its police force, and that Article XIII did not involve legitimate terms and conditions of employment.

Before the trial court, the Union argued that the Borough was estopped from contesting the arbitrability of the Articles because it had agreed to the inclusion of these provisions in a prior agreement and also contended that these provisions were proper subjects of bargaining. The trial court rejected the Borough's argument concerning Article II.A because the court interpreted the award to mean that the chief of police would act subject to the supervision of the mayor in his scheduling duties and thus the award did not require the Borough to violate the Code. The trial court also found, however, that the arbitrators had exceeded their authority by ordering the inclusion of Article XIII, because manpower requirements are not legitimate terms and conditions of employment. From this decision, the Union now appeals to this Court.

Our review of an arbitration award under Act 111 is in the nature of narrow certiorari. *Appeal of Upper Providence Police, Delaware County,* 514 Pa. 501, 526 A.2d 315

---

2. The award does not expressly address Article XIII. It does, however, include an "as is" clause which provides that "[e]xisting benefits not modified above shall remain in effect...." Arbitrators' Award at 12.

3. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46121.

(1987). Thus, we are limited to questions concerning (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess in exercise of the arbitrators' powers; and (4) constitutional questions. *Id.* In the instant case, we are only concerned with the third question; whether the award exceeds the arbitrators' powers. An arbitrator's award may be in excess of the arbitrator's powers if the award requires a public employer to perform an act that it is prohibited by law from performing or if it does not involve legitimate terms and conditions of employment. *Id.*

On appeal to this Court, the Union challenges both the common pleas court's determination concerning the Article XIII—required strength provision and its interpretation of the arbitrators' amendment of Article II.A.

### *Article XIII—Required Strength*

■ The Union makes two arguments concerning Article XIII. First, the Union contends that the trial court erred by concluding that police force strength was not a legitimate term or condition of employment subject to bargaining.

■ While Act 111 does not expressly provide for the reservation of managerial rights, a management decision or action is deemed bargainable under Act 111 only where it bears a rational relationship to employees' duties. *City of Philadelphia v. Pennsylvania Labor Relations Board,* 138 Pa.Commonwealth Ct. 113, 588 A.2d 67 (1991), *petition for allowance of appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991). And, in *International Association of Firefighters, Local 669 v. City of Scranton,* 59 Pa.Commonwealth Ct. 235, 429 A.2d 779 (1981) (*Scranton I* ), we determined that minimum force levels did not bear any rational relationship to the duties of public employees.

In *Scranton I,* the city and its firefighters' union had resolved all issues in their contract renewal negotiations except the minimum number of firefighters on the force and therefore engaged in binding arbitration. The union maintained, as in the instant case, that the size of the force was a

condition of employment under the bargaining agreement, directly related to the safety of the union members. The arbitrator agreed. However, this Court concluded upon review of the arbitrator's award that the total number of members on the force [4] was not rationally related to the performance of a fireman's duties such that it was a bargainable condition of employment under Act 111.

It is interesting to note that, while the facts in *Scranton I* concerned a fire department's strength, this Court characterized the bottom line of the appeal "[as] whether the court will permit the members of fire and *police* forces to decide how much of the municipal budget will be spent in the areas of fire and police protection...." *Id.* 59 Pa.Cmwlth. at 238, 429 A.2d at 781 (1981) (emphasis added). Thus, although the facts in *Scranton I* concerned a fire department, we believe that the holding is applicable, and in fact was intended to be applicable, to controversies involving the strength of a police force.

The Union argues that *Scranton I* has been superseded by our decision in *Commonwealth of Pennsylvania v. Pennsylvania Labor Relations Board,* 120 Pa.Commonwealth Ct. 336, 549 A.2d 240 (1988), *reversed on other grounds,* 528 Pa. 472, 598 A.2d 1274 (1991), in which the Court en banc distinguished Act 111 from the Public Employe Relations Act (PERA or Act 195) [5] with regard to "matters of inherent managerial prerogative" and stated:

> PERA is different from Act 111 in terms of both structure and completeness and ... [m]erely because *matters of inherent managerial policy may be submitted to an Act 111 arbitration panel* does not necessarily mean that those same matters may be submitted to a PERA arbitration panel....

*Id.* 120 Pa.Cmwlth. at 346–47, 549 A.2d at 244–45 (emphasis added). The Union seizes upon the emphasized language in the above quote and concludes that required strength even

---

**4.** As distinguished from the number in a particular company or manning an individual fire truck.

**5.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

though a "matter of inherent managerial policy" is thus subject to bargaining under Act 111, even though prohibited under PERA.

In arguing that this language indicates that matters of inherent managerial policy may be the subject of an interest arbitration award under Act 111, the Union reads the language out of context and fails to understand that it pertained to the argument of the appellants in that case, which this Court rejected. Further, and of much greater consequence, is the statement which follows the quoted language:

> Further, we do *not* agree with the [Labor Relations] Board's conclusion that *State Conference of State Police* [6] broadened the scope of bargaining in interest arbitration. In *State Conference of State Police* our Supreme Court reading Section 6(1)(c) of PLRA [7], 43 P.S. § 211.6(1)(c), and Act 111 *in para materia* held that the issue of an "agency shop" *was* a permissible subject of bargaining under Act 111. The Court did not indicate, however, that it had expanded the scope of collective bargaining permissible under Act 111.

*Id.* 120 Pa.Cmwlth. at 347, 549 A.2d at 245 (emphasis added).

■ Essentially, the language seized upon by the Union in *Commonwealth v. PLRB* was an explanation of why the Court rejected the argument of the Board. We used Act 111 merely as a foil to say that *even if* "matters of inherent managerial policy may be submitted to an Act 111 arbitration panel, it does not necessarily mean that those same matters may be submitted to a PERA arbitration panel, because PERA specifically exempts such matters from bargaining while Act 111 does not." It was never implicit in this statement that such matters are subject to Act 111 arbitrations. Quite to the contrary, we specifically held that they are not subject to Act 111 arbitration in *Scranton I*, which involved an Act 111 arbitration award unlike *Commonwealth v. PLRB* which involved an award under PERA. We conclude that the arbitra-

6. *Commonwealth v. State Conference of State Police,* 513 Pa. 285, 520 A.2d 25 (1987).

7. Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.13.

tors in the instant case did exceed their authority under Act 111 when they mandated a specific force level in Article XIII of the award.[8]

■ The Union further argues, however, that because the Borough had agreed to the provision governing required strength in the previous collective bargaining agreement, it is now estopped from arguing that an award mandating such a provision exceeds the authority of the arbitrators. In support of this assertion, the Union cites our decisions in *Scranton II* and *City of Scranton v. Local Union No. 669, International Association of Firefighters*, 122 Pa.Commonwealth Ct. 140, 551 A.2d 643 (1988) (*Scranton III*).

In *Scranton III*, the city and firefighters' union reached impasse in the course of negotiating a new contract and the union requested interest arbitration in which the city refused to participate. An award was nonetheless entered and the city, being dissatisfied with the award, appealed to the trial court which sustained the arbitrators' award. On appeal to this Court, the city argued, *inter alia*, that certain of the provisions contained in the award, including some which were newly mandated by the arbitrators and some which were simply carried over from prior agreements, were illegal.

We noted that the arbitrators could not mandate an illegal act (because such a mandate would exceed their authority), but also recognized that an employer could voluntarily agree to perform such an act and, that if an employer did so agree, it would be estopped from raising that illegality to attack an arbitrators' award. In addressing the specific factual context

8. We do note that a public employer may *voluntarily* agree to engage in bargaining over a term that would not otherwise be bargainable. *See International Association of Firefighters, Local 669 v. City of Scranton*, 68 Pa.Commonwealth Ct. 105, 448 A.2d 114 (1982) (*Scranton II*). *Scranton II* involved a dispute between the city and a firefighters' union over an arbitrator's interpretation of a collective bargaining agreement which mandated a minimum force for the fire department. Although the city argued that the number of firefighters was a managerial decision not subject to bargaining, we noted, in a footnote, that an employer may voluntarily choose to bargain over such issues, and it was undisputed that the city had chosen to do so in that case. *Id.* at 107 n. 3, 448 A.2d at 115 n. 3.

presented in *Scranton III*, we spoke at length about the problem in general, and the unusual facts in that case in particular, in words which bear repeating here:

There exists, however, in addition, a third and heretofore judicially unmeasured scenario; an unlawful provision is voluntarily agreed to by the public employer and is then carried forward in an "as is" clause in successive contracts without ever being challenged. At some point thereafter, the employer determines the provision to be illegal. What can it do? It is clear that it cannot raise illegality as a defense to the *existing* award or agreement. *Hickey.*[9] What it can do is bargain to have that provision removed from future contracts. *Id.* As Justice (now Chief Justice) Nix explained in *Hickey:*

The provision [at issue] was only binding for the year of 1978.... At the end of that contract period, the new administration was obviously free to decline to agree to this or any other provision it determined to be in conflict with its policy. Thus, through the bargaining process, the withdrawal of this term would be accommodated by some other concession by the governmental unit employer which would produce an agreement where each party is provided an equal opportunity to fashion an agreement in their best interest.

*Id.* at 200–01, 551 A.2d at 646–47.

It can thus be seen that a public employer may assert the defense of illegality in some cases (initial award), but not in all situations (by agreement or by submissive default in an award). In the instant case, certain provisions the City now attacks were newly mandated by the arbitrators and others were merely voluntary provisions carried forward from previous contracts. Assuming, *arguendo*, that *all* the provisions the City now attacks are illegal, it is clear that under normal circumstances those newly mandated by the arbitrators would be struck, and those merely being carried forward the City could have bargained to have eliminated.

**9.** *Fraternal Order of Police v. Hickey,* 499 Pa. 194, 452 A.2d 1005 (1982) (plurality opinion).

But this case does not present us with normal circumstances. Instead, we have a public employer which, despite notice, refused to even participate in the arbitration proceedings and, hence, raised none of the issues before the arbitration panel. . . .

The purpose of arbitration is to resolve labor disputes early on and the policy of avoiding use of the courts for such disputes is a strong one. *Chirico.*[10] Were we to permit a party who has not participated in the arbitration hearing, despite proper notice, to raise issues for the first time on appeal to the trial court we would be sanctioning a procedure which would actually promote rather than discourage appeals and, hence, would encourage protracted litigation. Such result would be in direct contravention of the purpose of arbitration. . . . In summary, the City's position that the issues *it* considers paramount are too important to waive, is soundly rejected; those issues have indeed been waived by the City.

*Id.* 122 Pa.Cmwlth. at 146–48, 551 A.2d at 647 (emphasis in original).

Thus, we concluded that normal circumstances did not exist in *Scranton III* because the city had refused to even participate in the arbitration and the city was therefore estopped from raising the illegality of the arbitrators' award because *the city's refusal to participate in the interest arbitration was tantamount to an agreement to voluntarily carry over the objected to provisions.* In other words, through its inaction, the city had waived any objections it had and accordingly had voluntarily agreed to the provisions mandated by the arbitrators.

*Scranton III* is distinguishable of course from the instant case where the Borough not only participated in the arbitration process but also informed the Union of its opposition to Article XIII at every opportunity. It cannot be argued that the Borough in any way agreed to voluntarily carry over Article XIII from the prior agreement and it is clear that

10. *Chirico v. Board of Supervisors for Newtown Township,* 504 Pa. 71, 470 A.2d 470 (1983).

Article XIII could be struck as contrary to law and in excess of the arbitrators' powers to award. We so hold.

### Article II.A—Work Schedules

■ The Union also challenges the trial court's interpretation of the award provision concerning work schedules, alleging that, although the trial court did not directly strike this provision, it did so in effect through its interpretation of the arbitrators' award.

Article II.A, as set forth in the prior agreement, provided as follows:

It shall be the duty of the chief of police or his designate to prepare the schedule and post the schedule at least one week in advance whenever it is possible. The chief of police or his designate will attempt to prepare a consistent and regular work schedule as the work load allows.

The award, significantly, amended this provision, however, by adding the introductory phrase: "In a manner not inconsistent with the Borough Code and especially 53 P.S., Section 46121, Para. 2." On appeal to the trial court, the Borough argued that the arbitrators exceeded their authority because the assignment of scheduling duties to the chief violated Section 1121 of the Code which, according to the Borough, assigns such duties to the mayor. The trial court rejected the Borough's argument because it concluded that the provision in the award required the chief to act *subject to* the discretion of the mayor and thus that it did not violate Section 1121 of the Code. We agree.

Section 1121 of the Code provides as follows:

[T]he mayor of the Borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties.... *The mayor may, however, delegate to the chief of police or other officers supervision over and instruction to subordinate officers in the manner of performing their duties.*

53 P.S. § 46121 (emphasis added). It is apparent from the emphasized language that a mayor may delegate scheduling and other duties to the chief of police. Thus, the arbitrators' award, even absent the interpretation supplied by the trial court, did not require the Borough to perform an illegal act. On the contrary, the award specifically states that Article II.A is to be read "in a manner not inconsistent with the Borough Code."

Accordingly, the trial court's order is affirmed.

### ORDER

NOW, December 1, 1993, the order of the Court of Common Pleas of Lycoming County is affirmed.