Pennsylvania Labor Relations Board, Appellant *v.* Greater Johnstown Area Vocational-Technical School, Appellee.

Pennsylvania Labor Relations Board *v.* Greater Johnstown Area Vocational-Technical School. Greater Johnstown Area Vocational-Technical Education Association, Appellant.

Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board *v.* Greater Johnstown Area Vocational-Technical School. Greater Johnstown Area Vocational-Technical School, Appellant.

Argued December 5, 1979, before Judges CRUMLISH, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Mary E. Gavign*, with her *James L. Crawford, Donald A. Wallace* and *Larry J. Rappoport*, for Pennsylvania Labor Relations Board.

*Marlin B. Stephens*, for Greater Johnstown Area Vocational-Technical School.

*William K. Eckel*, for Greater Johnstown Area Education Association.

OPINION BY JUDGE ROGERS, January 21, 1980:

We have consolidated cross appeals of the Pennsylvania Labor Relations Board (Board), the Greater Johnstown Area Vocational-Technical Education Association (Association), and the Greater Johnstown Area Vocational-Technical School (School) from an order of the Court of Common Pleas of Cambria County affirming in part and reversing in part an order of the Board which held that the School had committed unfair practices under Section 1201 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. §1101.1201 (PERA). We affirm in part and reverse in part.

This dispute arose when three grievances were filed with the School by the Association. Two of these grievances questioned the propriety of the suspension of two professional employes; the third grievance questioned propriety of the School's decision to eliminate two academic positions. All three grievances alleged that the School's actions violated the "just cause provisions" contained in a collective bargaining agreement between the School and the Association, which provides:

No Professional Employee shall be reduced in rank or compensation or derived [sic] of any professional advantage without just cause. Any such action asserted by the Joint Operating Committee, or any agent or representative thereof, shall be subject to the grievance procedure herein set forth.

The grievance procedure referred to in the "just cause" provision is set forth in the collective bargaining agreement and establishes a four-step process, culminating in binding arbitration. The three grievances were processed through the first three steps of the grievance procedure. The School, however, refused to submit these grievances to arbitration. The Association then filed a charge of Unfair Practice with the Board. At a hearing on these charges, the School contended that the grievances were invalid because they were not signed by the employes involved and that the grievances were within the sphere of managerial prerogative and thus not arbitrable. The Board issued a Nisi Decision and Order holding against the School, finding that, by refusing to proceed to arbitration, the School had committed unfair practices under Section 1201(a)(5) of PERA, 43 P.S. §1101.1201(a)(5), and ordered the School to proceed to arbitration. See *Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board,* 30 Pa. Commonwealth Ct. 403, 373 A.2d 1175 (1977). The School filed timely exceptions to this order, alleging that the Board, by not requiring the employes involved to appear and testify before the Board, had deprived the School of its constitutional right to cross-examine these individuals. After oral argument on the School's exceptions, the Board issued a final order dismissing the exceptions and making final the Nisi order. The School then filed a petition to set aside the order in the court below. The lower court affirmed the

Board with regard to the School's refusal to process the two grievances filed by the Association involving the suspension of the two professional employes, but reversed the Board as to the grievance concerning the elimination of two academic positions, finding this to be a managerial function and therefore not arbitrable under Section 702 of PERA, 43 P.S. §1101.702, which provides that

> [p]ublic employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

The School again contends before this Court that the Board erred in ordering the School to proceed to arbitration because the School's constitutional right of cross-examination was denied by the Board's failure to require the appearance of the individual employes. We believe this argument to be. without merit. No question as to the right to cross-examine arises until a witness testifies. *See A. P. Weaver and Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 284 A.2d 515 (1971). No witnesses were called by either party before the Board and therefore no right in the School to cross-examine witnesses arose. Moreover, the School could have subpoenaed any persons whom it wished to examine.

The School also presses its argument that the grievances were not arbitrable because they were filed

by the Association and not signed by the individual employes involved. The collective bargaining agreement provides that in grievance proceedings "[a] 'Aggrieved Party' is the Professional Employee or group of Professional Employees who submit a grievance or on whose behalf it is submitted.'' While we believe the School's position to be, at best, weak, it is one which not only involves an interpretation of this clause of the parties' contract but also deals with procedural matters and must therefore be considered in the first instance by the arbitrator. *Kardon v. Portare,* 466 Pa. 306, 353 A.2d 368 (1976).

The Association contends that the Court below erred in reversing the Board's holding that the grievance concerning the elimination of two academic positions is arbitrable. We agree. The lower court relied on Section 702 of PERA, 43 P.S. §1101.702 in finding that this grievance involved a managerial prerogative and is therefore not arbitrable under Section 701 of PERA, 43 P.S. §1101.701. However, our Supreme Court has held that

> where an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under Section 701[1] simply because it may touch upon basic

---

[1] Section 701 of PERA, 43 P.S. §1101.701 provides:

Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

policy. It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable affect on the basic policy of the system as a whole.

*Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 507, 337 A.2d 262, 268 (1975). Applying this standard, our Supreme Court subsequently held in *Pennsylvania Labor Relations Board v. Mars Area School District,* 480 Pa. 295, 389 A.2d 1073 (1978) that the elimination of paid teacher-aide positions and the replacement of the paid teacher aides with volunteer workers was not an inherent managerial function under Section 702 of PERA and therefore not arbitrable because it "deprived the Association's members of work, and thus had an immediate and direct impact upon 'a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment.'" 480 Pa. at 300, 389 A.2d at 1075, quoting *State College Area School District, supra,* 461 Pa. at 507, 337 A.2d at 268 (1975). Like the elimination of the paid teacher-aide positions in *Mars, supra,* the elimination of the two academic positions in the instant case also presents an issue which "deprived the Association's members of work and thus ha[s] an immediate and direct impact" upon the Association's members' legitimate interests. It therefore presents an arbitrable issue under Section 701 of PERA, 43 P.S. §1101.701.

Nor can we say that the issue of the elimination of the two academic positions is removed from arbitration by the terms of the collective bargaining agreement. A dispute is not rendered incapable of arbitration by an agreement "unless it may be said with posi-

tive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute." *Lincoln University of the Commonwealth System of Higher Education v. Lincoln University Chapter of the American Association of University Professors*, 467 Pa. 112, 123, 354 A.2d 576, 582 (1976). *See also Oxford Board of School Directors v. Pennsylvania Labor Relations Board*, 31 Pa. Commonwealth Ct. 441, 376 A.2d 1012 (1977). Under the framework of the parties' collective bargaining agreement, all grievances are subject to arbitration; a grievance being defined in the agreement as "any violation of this agreement or any dispute with respect to its meaning, interpretation or application." The Association claims that the elimination of the two academic positions violates the "just cause" provision of the agreement, thereby asserting an alleged violation of the agreement. We perceive of no argument, nor has the School advanced any arguments, whereby we may say "with positive assurances," that this dispute does not arguably fall within the arbitration provisions of the collective bargaining agreement. In any event, the resolution of the issue of whether or not the arbitration clause of the parties' agreement encompasses the dispute over the elimination of the two academic positions is a "question of the *scope* of the grievance arbitration procedure [and] is for the arbitrator, at least in the first instance." *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 75, 391 A.2d 1318, 1323 (1978). (Emphasis in original.)

Accordingly, we enter the following:

## ORDER

AND NOW, this 21st day of January, 1980, that portion of the order of the Court of Common Pleas of Cambria County, No. 1977-4483 directing the Greater

Johnstown Area Vocational-Technical School and the Greater Johnstown Area Education Association to proceed to arbitration on the issues of the suspension of Earl Wadsworth and Kathleen Shedlock Patrick is affirmed; that portion of the order holding that the elimination by the Greater Johnstown Area Vocational-Technical School of two academic positions is not to be arbitrated is reversed and the record is remanded for further proceedings consistent with this opinion.

Judge MacPhail dissents.

This decision was reached prior to the expiration of the term of office of Judge DiSalle.