**RINGGOLD SCHOOL DISTRICT, a Political Sub-division of the Commonwealth of Pennsylvania, Appellant,**

v.

**RINGGOLD EDUCATION ASSOCIATION, an Unincorporated Association.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1997.
Decided May 22, 1997.

Michael E. Flaherty, Pittsburgh, for appellant.

Ronald N. Watzman, Pittsburgh, for appellee.

Before DOYLE and McGINLEY, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

This appeal concerns an Act 195[1] grievance arbitration award, which the Court of Common Pleas of Washington County affirmed by an order entered on May 16, 1996. The sole issue for our review is whether the arbitrator lacked jurisdiction in this matter. We affirm.

The record reveals the following facts. Sharon Mucci Bosson was an elementary school teacher for the Ringgold School District for twenty-two years. On January 15, 1993, she opted for the School District's early retirement incentive program, which was adopted by the School Board on May 26, 1992. That program was offered to any employee who wished to retire and who had at least twenty years of service; it provided, *inter alia,* health benefits until age sixty-five or until the retiree became eligible for Medicare, and $10,000 dollars in severance pay. (Petitioner's Exhibit at No. 3; Reproduced Record (R.R.) at 138a.) At first, employees were to apply for the program no later than June 5, 1992, for retirement to be effective on June 30, 1992. However, the record indicates that a memo, dated August 27, 1992, and written by Dr. Charles E. Stacey, the Superintendent of Schools, was circulated to the faculty announcing that the School Board had extended the program "through the first semester of the 1992–93 school term." (Petitioner's Exhibit at No. 5; R.R. at 144a.)

On January 6, 1993, the Ringgold Education Association President, Jim Martell, sent a memo reminding his members that application for the early retirement program had to be made by January 19, 1993, the end of the first semester of the 1992–93 school term. (Respondent's Exhibit at No. 6; R.R. at 179a.)

. Ms. Bosson sent a letter to the Superintendent dated January 15, 1993, in which she stated, in pertinent part, "Because of my upcoming marriage and subsequent relocation, I intend to take the early retirement incentive as offered by the Ringgold School District." (Petitioner's Exhibit at No. 9; R.R. at 145a.)

The minutes of the February 9, 1993, School Board meeting establish that the District accepted, by a unanimous vote, the resignation of Ms. Bosson, as well as that of several other teachers.

At its May 19, 1993 meeting, the School Board adopted the policy that only those employees who were fifty-five years of age or older may qualify for the early retirement program. The minutes of the meeting state that, although the School Board had accepted the retirement of several teachers by a motion made at the February 9th meeting, that motion did not include the granting of the early retirement incentive program to the retirees. The minutes also state that any employee who previously submitted a resignation which was accepted, but who now does not qualify for the program, "may rescind such resignation." The School Board then voted to grant early retirement benefits to all those whose resignation had been previously accepted, *except* for Ms. Bosson.[2] (Petitioner's Exhibit at No. 8; R.R. at 183a.)

Ms. Bosson received a letter, dated June 4, 1993, which was signed by each member of the School Board and stated, in pertinent part, "At its meeting on February 9, 1993, the Ringgold Board of School Directors approved a motion accepting your resignation as a professional employee of the school district, effective June 4, 1993." (Respondent's Exhibit at No. 9; R.R. at 180a.) The letter made no mention of the age limit qualification that was placed upon the early retirement program at the May 19th meeting, or of the fact that she was not granted the early retirement benefits at that meeting.

Thereafter, the School District informed the Ringgold Education Association (Association) that it did not intend to grant Ms. Bosson the benefits from the early retirement incentive program. Upon learning of the School District's intention, Ms. Bosson

1. Public Employees Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

2. Ms. Bosson would have been forty-three years old at the time of the effective retirement date.

filed a grievance on June 6, 1993. However, in disregard of its announced position that Ms. Bosson would not be granted retirement benefits, in July 1993, the School District nevertheless paid Ms. Bosson her $10,000 dollar retirement benefit, which the District later demanded that she return, while her health care benefits were continued.

Ms. Bosson's grievance was submitted to binding arbitration. The arbitrator sustained the grievance after concluding that the School District would be acting in "bad faith" and would be denying Ms. Bosson her early retirement benefits "without just cause" if it ceased payment of her health benefits and continued to demand that she return the $10,000 dollar retirement incentive.

On appeal, the School District contends that the arbitrator lacked jurisdiction because the subject matter of the dispute is not contained within the express provisions of, or within the essence of, the collective bargaining agreement.

Initially, we recognize that the School District did not raise the issue of lack of jurisdiction at the arbitration hearing. Rather, the issue was raised by the School District in its brief to the arbitrator after the hearing. The arbitrator held that, because the School District failed to raise the issue in a timely manner, the issue had been waived. Indeed, the Association contends that the arbitrator was "within his authority in holding that the District had waived the issue of nonarbitrability by not having raised the issue prior to filing its brief." (Appellee's brief at 11.) We disagree.

■ The Association presents no relevant case law, nor has our research revealed any, which holds that the issue of an arbitrator's jurisdiction may be waived on appeal. In arguing that this Court may not disturb the finding of the arbitrator in this matter, the Association cites to *York County Hospital and Home v. District Council 89, American Federation of State, County and Municipal Employees, AFL–CIO Local 1485*, 57 Pa.Cmwlth. 336, 426 A.2d 1224 (1981). However, we find that *York County Hospital* is clearly distinguishable from the present case. In that case, we held that the issue of wheth-

er a party's grievance was timely filed was a "matter whose final determination is left to the arbitrator and not to the courts." *Id.* 426 A.2d at 1225. Thus, the situation in *York County Hospital* involved the procedural aspects of grievance arbitration matters, the determination of which belongs solely to the arbitrator. However, the issue in this case does not involve such procedural aspects, but, rather, involves the more fundamental issue of whether the arbitrator had jurisdiction. Therefore, *York County Hospital* is not relevant in determining whether the arbitrator had jurisdiction over the subject matter of this dispute.

■ Indeed, it is well-established that an objection to a court's jurisdiction **can never** be waived. *See Dover v. Philadelphia Housing Authority*, 318 Pa.Super. 460, 469, 465 A.2d 644, 649 (1983) (stating that "[w]hen a court takes action beyond the power conferred on it by law (its jurisdiction), its action is a nullity, and objection to it cannot be waived by the defendant.") We have found no authority to support the contention that this principle does not similarly apply to an arbitrator's jurisdiction. Therefore, the arbitrator erred in holding that the jurisdictional issue was waived.

However, the arbitrator also discussed the merits of the School District's argument regarding the issue of jurisdiction and concluded that he did, in fact, have jurisdiction pursuant to the collective bargaining agreement. We will not disturb this holding of the arbitrator.

■ We recognize that our scope of review in this matter is extremely narrow. Because parties to a collective bargaining agreement have bargained for an arbitrator's construction, not the court's, a court has "no business intruding into the domain of the arbitrator because its interpretation of the agreement differs from his." *Scranton Federation of Teachers, Local 1147, AFT v. Scranton School District*, 498 Pa. 58, 65, 444 A.2d 1144, 1147 (1982). Broad judicial deference must therefore be given to arbitrators' decisions, and this "applies with equal force to determinations regarding the arbitrability of the subject matter of a grievance." *Id.*

The United States Supreme Court observed the following in *United Steelworkers of America v. Warrior and Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960):

> In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail....

*Id.* at 584–85, 80 S.Ct. at 1354; *See also Scranton Federation of Teachers, Local 1147, AFT v. Scranton School District*, 498 Pa. 58, 444 A.2d 1144 (1982).

This Court stated in *Pennsylvania Labor Relations Board v. Greater Johnstown Area Vocational–Technical School*, 48 Pa.Cmwlth. 604, 410 A.2d 1290 (1980), that "[a] dispute is not rendered incapable of arbitration by an agreement 'unless it may be said with **positive assurance** that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.'" *Id.* 410 A.2d at 1293 (emphasis added) (quoting *Lincoln University of the Commonwealth System of Higher Education v. Lincoln University Chapter of the American Association of University Professors*, 467 Pa. 112, 123, 354 A.2d 576, 582 (1976)).

Additionally, we held in *Pennsylvania Labor Relations Board v. Greater Johnstown Area Vocational–Technical School* that "the resolution of the issue of whether or not the arbitration clause of the parties' agreement encompasses the dispute ... is a 'question of the **scope** of the grievance arbitration procedure [and] is for the arbitrator, at least in the first instance.'" *Id.* 410 A.2d at 1293 (emphasis in original) (quoting *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 75, 391 A.2d 1318, 1323 (1978)). Where an arbitrator has interpreted a collective bargaining agreement "'in favor of the arbitrability of the grievance before him, a reviewing court should be slow indeed to disagree.'" *Scranton Federation of Teachers, Local 1147, AFT v. Scranton School District*, 498 Pa. 58, 66, 444 A.2d 1144, 1147 (1982) (quoting *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 31–32, 381 A.2d 849, 851 (1977)).

In this case, there is no express provision excluding the arbitration of a dispute involving the early retirement incentive program. The arbitrator concluded that the provisions in the Collective Bargaining Agreement that granted him the authority to decide the matter are the following:

### ARTICLE IV

#### GRIEVANCE PROCEDURE

A. *Definitions*

  1. *Grievance*

    A "grievance" is hereby defined as:

    ....

    (b) That any of the parties to the Agreement acted in **bad faith,** or in an arbitrary, capricious manner contrary to the established policy or practice governing or affecting the implementation of the Agreement or the orderly and efficient operation of the business of the employer.

(Petitioner's Exhibit at No. 1; R.R. at 70a.) (Emphasis added.)

### ARTICLE V

#### RIGHTS OF THE PARTIES

  ....

B. *Just Cause Provision*

  No member of the bargaining unit shall be disciplined, reprimanded, **reduced in rank and/or compensation without just cause....**

(R.R. at 74a.) (Emphasis added.)

We cannot say with "positive assurance" that Articles IV and V of the Collective Bargaining Agreement do not encompass disputes involving early retirement incentive programs. As such, we conclude that the arbitrator had the authority to find that, in light of the above facts, the School District acted in bad faith by attempting to deny Ms. Bosson compensation, in the form of benefits and severance pay, which she was entitled to under the early retirement incentive program.

Furthermore, we reject the School District's assertion that the early retirement

incentive program was a matter of managerial policy only and was not mandatorily bargainable. This Court has previously held that a school district has the duty to bargain collectively with its employees on matters relating to wages, hours, and other terms and conditions of employment under Section 701 of PERA, 43 P.S. § 1101.701,[3] and that a retirement allowance is a bargainable "term or condition of employment." *Pennsylvania State Education Association v. Baldwin Whitehall School District,* 30 Pa.Cmwlth. 149, 372 A.2d 960, 963 (1977).

As such, we find no error by the trial court in affirming the arbitrator's award.

Order affirmed.

### ORDER

NOW, May 22, 1997, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby affirmed.

FLAHERTY, J., did not participate in the decision of this case.

---

**3.** Section 701 of PERA states the following, in pertinent part:

Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to ... confer in good faith with respect to wages, hours and other terms and conditions of employment....

43 P.S. § 1101.701.