IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Hempfield Township, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| International Brotherhood of | : | No. 166 C.D. 2025 |
| Teamsters, Local Union No. 30 | : | Argued: March 3, 2026 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE STELLA M. TSAI, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE TSAI         FILED: April 15, 2026

Hempfield Township (Township) appeals from the January 27, 2025 order of the Court of Common Pleas of Westmoreland County (trial court), denying the Township's petition to vacate an arbitrator's award. The award required the Township to reinstate a Medicare supplemental insurance plan for retired employees pursuant to a collective bargaining agreement (CBA) negotiated between the Township and International Brotherhood of Teamsters, Local Union No. 30 (Union) pursuant to the Public Employe Relations Act[1] (PERA). Before this Court, the Township argues that the arbitrator lacked jurisdiction over the grievance and that the arbitrator's award violates public policy. We affirm.

## I. BACKGROUND

Briefly, the Township entered into a CBA with the Union, effective December 23, 2020. The Township and Union had two prior CBAs that were in

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

effect from December 23, 2014, to December 22, 2020, and from December 23, 2004, to December 22, 2014, respectively.

Relevant to this appeal, in all three CBAs (Relevant CBAs) the Township agreed to provide medical insurance to qualifying retired employees equal to the plan(s) in effect at the time of their retirement. If a plan was no longer in effect, the Relevant CBAs required the Township to purchase a plan with equal benefits. The Relevant CBAs also provide that the benefits of retired employees cannot be reduced in a future agreement. *See, e.g.*, R.R. at 84a-85a.

On October 10, 2022, the Township informed all retired employees who were eligible for Medicare that the Township was switching from the Highmark Signature 65 Medicare plan (Signature 65 plan) to the Highmark Freedom Blue Medicare Advantage plan (Freedom Blue plan). The Union filed a grievance "on behalf of all affected" on October 21, 2022, and, ultimately, the parties selected an arbitrator to arbitrate the grievance. Before the arbitrator, the Township argued that the grievance had not been properly filed because it was filed on behalf of "all affected" employees instead of a specific named retired employee. The Township further argued that the change in Medicare supplemental insurance plans did not violate the Relevant CBAs and would save the Township money.

The arbitrator found in favor of the Union and ordered the Township to reinstate the Signature 65 plan for the affected retired employees. The Township filed with the trial court a petition to vacate the arbitration award. The trial court found that the arbitrator's decision that he had authority to rule on this grievance

2

satisfied the essence test and that the arbitrator's decision did not violate the PERA. The Township then filed a notice of appeal.[2]

## II. ISSUES

On appeal,[3] the Township argues that the trial court erred by affirming the arbitrator's award for two reasons. First, the Township argues that the arbitrator lacked jurisdiction to decide a grievance filed on behalf of "all affected" employees instead of on behalf of an identified grievant or grievants. Second, the Township argues that the arbitrator's award violates Section 702 of the PERA[4] by interfering with the Township's managerial authority to control its budget.[5] The Union, in a

---

[2] The trial court's January 27, 2025 order does not explicitly confirm the arbitrator's award, nor was judgment subsequently entered on the arbitrator's award as would be required under Section 7321.29(a) of the Revised Statutory Arbitration Act (Act), 42 Pa. C.S. § 7321.29(a). *See* 42 Pa. C.S. § 7321.29(a)(3), (6) ("An appeal may be taken from . . . (3) an order confirming or denying confirmation of an award . . . or (6) a final judgment entered under [the Act]."). However, this Court has recognized that in the interests of judicial economy, we can regard as done that which ought to have been done and proceed to the merits despite the failure to enter judgment. *See Arches Condo. Ass'n v. Robinson*, 131 A.3d 122, 127 n.4 (Pa. Cmwlth. 2015). It would be appropriate here to regard as done what ought to have been done and address the merits of this appeal.

[3] Our standard of review of labor arbitration awards under the [PERA] is the 'essence test.'" *Allegheny Cnty. Prison Emps. Indep. Union (APEIU) v. Allegheny Cnty., Pennsylvania (Cnty. Jail)*, 313 A.3d 358, 365 (Pa. Cmwlth. 2024). The essence test is a two-part test. First, this Court must "determine if the issue is encompassed within the terms of the CBA." *Id.* "Second, if the issue is embraced by the agreement[] and[,] thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement." *Apollo-Ridge Sch. Dist. v. Apollo-Ridge Educ. Ass'n*, 799 A.2d 911, 913 (Pa. Cmwlth. 2002) (*Apollo-Ridge*) (quoting *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Pro. Assoc.*, 743 A.2d 405, 413 (Pa. 1999)).

[4] 43 P.S. § 1101.702.

[5] The Township, in its brief, presents three issues, two of which are overlapping. The Township then develops those issues in two sections of its argument, not three. In conformity with the presentation of the issues in the body of the Township's brief, which is consistent with the trial court's opinion and, to some extent, the Union's brief, we address the issues as laid out in the argument section of the Township's brief.

counter-statement of the issues, argues that the trial court properly concluded that the arbitration award drew its essence from the Relevant CBAs and that the arbitration award did not violate the public policy exception to the essence test.

## III. DISCUSSION

### A. Arbitrator's Jurisdiction

First, we address the Township's claim that the trial court erred by refusing to vacate the arbitrator's award for lack of jurisdiction. The Township explains that, "[w]hen a party raises the issue of subject matter jurisdiction[,] the arbitrator must decide, in the first instance, whether the grievance is arbitrable." Township's Brief at 18. The Township argues that the Relevant CBAs do not provide for grievances by anonymous individuals. *Id.* at 16. The Township contends that the language of the Relevant CBAs explicitly requires a grievance to be filed by an identified employee or retiree, and it is undisputed that no such grievant was identified in the grievance. The Township characterizes the parties as having agreed in the CBA that the affected or aggrieved employee would be involved in every step of the grievance process, and that the Union has a duty at the time it issues the notice to proceed to arbitration to identify with specificity the employee or employees involved. The Township maintains that these provisions allow the Township to attempt to settle a grievance with the identified grievant. To the extent that the arbitrator, in addressing this alleged deficiency, suggested that the Township had the opportunity to "make inquiries of the Union" after the filing of the grievance regarding who was included in the group of "all affected," the Township argues that such position is not based on the language of the Relevant CBAs. *Id.* at 19 (quoting R.R. at 27a). Because the Union's grievance did not identify any grievant by name, the Township contends that the arbitrator's conclusion that he had jurisdiction over this grievance fails to

4

satisfy the essence test because that conclusion is not based on the interpretation of any language in the Relevant CBAs. *Id.* at 18-19.

The Union responds that the Township waived its claim about jurisdiction because it raised it for the first time before the trial court. Union's Brief at 14. In the alternative, the Union argues that the arbitrator's decision regarding whether this dispute was subject to arbitration satisfies both elements of the essence test.[6] *Id.* at 14-26.

As noted above, "[t]he first prong of the essence test requires the reviewing court to determine whether the issue decided was properly before the arbitrator." *Millcreek Twp. Sch. District v. Millcreek Twp. Educ. Support Pers. Ass'n*, 210 A.3d 993, 1003 (Pa. 2019) (*Millcreek*). Our Supreme Court has explained that "the reviewing court must give deference to the arbitrator's interpretation of the CBA[,] including for purposes of the first prong of the essence test." *Id.* at 1004. This approach "is consistent with the highly deferential spirit of" the essence test. *Id.* "Under the second prong [of the essence test], we ask whether the award itself can

---

[6] Additionally, the Union argues that this Court previously rejected identical arguments from the Township in a prior, unreported decision involving the same parties. Union's Brief at 21-25 (citing *Twp. of Hempfield v. Teamsters Local Union No. 30* (Pa. Cmwlth., No. 2244 C.D. 2011, filed Dec. 21, 2012), 2012 WL 8704395 (*Hempfield I*). First, we note that unreported decisions of this Court filed after January 15, 2008, may be cited as persuasive authority. *See* Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a). In *Hempfield I*, the Township argued that the arbitrator lacked jurisdiction over the grievance because the issue was based on a Township Resolution clarifying the criteria for dependent health care coverage for active and retired employees and not based on the then-current CBA. *See Hempfield I*, slip op. at 2, 9. This Court rejected that argument, explaining that it was "abundantly clear the grievance involved an interpretation of the CBA's health and welfare provision. *Id.*, slip op. at 10-11. "Moreover, under the essence test, the question is not whether the Union cited to the CBA or some other pleading standard, but whether the issue grieved is embraced by the CBA." *Id.*, slip op. at 11. The jurisdictional issue in the instant matter relates to whether a grievance can be filed on behalf of "all affected" or whether it must be filed on behalf of a named current or retired employee. It does not involve whether the right asserted was included in the CBA or based upon a Township resolution. Therefore, *Hempfield I* is not applicable to the instant appeal.

5

rationally be derived from the CBA." *Id.* at 1006. "Accordingly, even though an arbitrator is not permitted to ignore the CBA's plain language in fashioning an award, the arbitrator's understanding of the plain language must prevail. A reviewing court 'should not reject an award on the ground that the arbitrator misread the contract.'" *Id.* (quoting *United Paperworkers Internat'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

We disagree with the Union that the Township waived its jurisdictional claim based on the argument that the grievance had been filed on behalf of "all affected" instead of a specific claimant. The Township had made the same argument to the arbitrator, which he rejected in finding that the agreement was arbitrable. *See* R.R. at 22a. Additionally, an objection to a court's jurisdiction and, by extension, a labor arbitrator, can never be waived. *See Ringgold Sch. Dist. v. Ringgold Educ. Ass'n*, 694 A.2d 1163, 1165 (Pa. Cmwlth. 1997).

Moreover, we have recognized that a union may have standing to file a grievance on behalf of retirees who are not covered by the current CBA. *Zipovsky v. City of Hazleton Aggregated Pension Bd.*, 326 A.3d 134, 143 (Pa. Cmwlth. 2024). We explained:

> [A]lthough the retirees are not part of the current bargaining unit, this does not omit them from the benefits bargained for them by a prior bargaining unit that negotiated a previous CBA. If the [employer] violates a provision of a CBA that was in effect when the retiree retired, the [u]nion has standing to file a grievance on behalf of the retiree against the [employer], depending upon the language of the CBA.

*Id.* at 143 (quoting *Hempfield Area Sch. Dist. v. Pa. Lab. Rels. Bd.*, 920 A.2d 222, 226 (Pa. Cmwlth.), *appeal denied*, 932 A.2d 1290 (Pa. 2007)).

The Relevant CBAs provide that arbitration is the fourth step of the grievance procedure and further provide, in relevant part, that "[a] request for arbitration may

be initiated by the Union serving upon the Township a notice, in writing, of an intent to proceed to arbitration. **This notice shall identify** the Agreement provision in dispute, the issue to [be] determined, and **the employee or employees involved . . . .**" R.R. at 62a (emphasis added). It further provides, in part:

> The arbitrator shall have no power or authority to add to, subtract from or modify the provisions of this Agreement in arriving at a decision on the issue or issues presented and shall confine his decision solely to the application and interpretation of this Agreement. The decision or award of the arbitrator shall be final and binding.

*Id.*

Here the arbitrator explained that "[i]t is clear that the term 'employee' in the agreement is not limited to active employees and includes retired employees." R.R. at 27a. Further, "[t]he contract provides that 'all disputes' concerning the agreement shall be processed through the grievance procedure. This grievance was signed by the Union president and timely filed." *Id.* The arbitrator concluded that the "Union has a representative capacity and duty to represent employees, including retired employees, for whom the Union negotiated benefits." *Id.* For those reasons, although the arbitrator might not have used the same terminology, the arbitrator addressed the issue of jurisdiction and opted to exercise it over this matter when he "conclude[d] that the grievance is arbitrable[,]" even in the absence of a named grievant. *Id.*

We thus interpret the Township's argument as challenging whether the determination that the arbitrator had jurisdiction fails to satisfy the first prong of the essence test—*i.e.*, "the issue, as properly defined, is within the terms of the collective bargaining agreement." *Pa. State Corr. Officers Ass'n v. Dep't of Corr.*, 235 A.3d 426, 429-30 (Pa. Cmwlth. 2020). The Township contends that the arbitration award falls outside the terms of the Relevant CBAs because the Union did not identify

"employees involved" by name as required by the Relevant CBAs. *See* R.R. at 62a. In advancing that argument, the Township relies on the "Fourth Step-Arbitration" provision for grievances for its position that the Union was required to identify the specific employees by name. *See id.* We observe, however, that the language of the provision does not use the words "specific" or "name." *See id.* Rather, it requires that the Union "shall identify . . . the employee or employees involved." *Id.*

It is important to note that the arbitration award at issue is not related to discipline or a narrow decision by the Township relating to a particular employee; instead, the grievance pertains to the decision by the Township that affects the group of retired Township employees who were eligible for coverage paid for by the Township under the Signature 65 plan. This is the same group of retired employees to which the Township **itself** provided notice of its intended switch from the Signature 65 plan to the Freedom Blue plan. When the nature of the grievance is considered in connection with the identification of the employees involved as "all affected" employees, it is clear to which group of retired employees the grievance pertains. Thus, it cannot be said that the Union did not identify the employees involved in some manner; it simply did not identify all of them by name as the Township argues it must.[7] Moreover, the Relevant CBAs did not expressly provide that the employees involved must be identified by name. Thus, based on our review of the record, we cannot conclude that the decision by the arbitrator to assume jurisdiction over the grievance is outside the terms of the Relevant CBAs, because the arbitrator could have interpreted the Relevant CBAs as permitting identification of "employees involved" broadly in circumstances such as this. *See Millcreek*, 210 A.3d at 1003-04; *Zipovsky*, 326 A.3d at 143. In other words, this grievance was

---

[7] Interestingly, given that the Township sent the notices to the "affected" retired employees, the identification of those retired employees should be known to the Township.

properly before the arbitrator and within his jurisdiction. *See Millcreek*, 210 A.3d at 1003. The Township, therefore, is not entitled to relief on this issue.

### B. Violation of Section 702 of the PERA/Public Policy Exception

Next, the Township essentially argues that the arbitrator's award violates Section 702 of the PERA because it interferes with the Township's managerial authority to control its budget, such that the award must be vacated. More specifically, the Township argues that "the [a]rbitrator's order to the Township to purchase a specific insurance plan interferes with the Township's managerial authority to control its budget in violation of" Section 702 of the PERA. Township's Brief at 23. In support of that argument, the Township contends that it would need to raise taxes by 1.75 mills to comply with the arbitrator's award and balance its budget. *Id.* at 24. Based upon those circumstances, the Township maintains that the arbitrator "exceeded his power and violated public policy by usurping the Township's exclusive legislative power to make appropriations and control its budget." *Id.*

Section 702 of the PERA provides, in relevant part, that "[p]ublic employers shall not be required to bargain over matters of inherent managerial policy," including, but not limited to, "areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure[,] and selection and direction of personnel." 43 P.S. § 1101.702. Thus, public employers are not obligated under the PERA "to negotiate matters of 'inherent managerial policy.'" *Pa. State Sys. of Higher Educ. v. Ass'n of Pa. State Coll. & Univ. Facs.*, 98 A.3d 5, 13 (Pa. Cmwlth. 2014) (*PAASHE*) (quoting *Pa. Turnpike Comm'n v. Teamsters Local Union No. 77*, 87 A.3d 904, 910 (Pa. Cmwlth. 2014)). If, however, a public employer chooses to

9

negotiate matters that are inherently managerial, "absent contrary positive legislation, it is bound by the terms of a [CBA]." *Id.* at 13 (quoting *Coatesville Area Sch. Dist. v. Coatesville Area Tchrs.' Ass'n/Pa. State Educ. Ass'n*, 978 A.2d 413, 417 (Pa. Cmwlth. 2009), *appeal denied*, 989 A.2d 10 (Pa. 2010)) (alteration in *PASSHE*). This Court, relying on Section 702 of the PERA, has previously rejected an employer's argument that the employer's "decision to change insurance carriers is inherently managerial[,]" and explained that "[s]uch a decision affects the wages and terms of employment." *Grandinetti v. Unemployment Comp. Bd. of Rev.*, 486 A.2d 1040, 1044 n.9 (Pa. Cmwlth. 1985), *appeals denied*, 541 A.2d 1139 (Pa. 1988).

The Union counters that the arbitrator's award does not violate public policy. The Union characterizes the Township as advancing "an extraordinary and unsupported interpretation of the [PERA] that suggests that public sector bargaining units cannot negotiate over insurance coverage." Union's Brief at 26. The Union explains that, in effect, the Township is arguing that, by ordering restoration of the plan the Township voluntarily negotiated and agreed to provide since 2004, the arbitrator's award somehow strips or denies the Township of its managerial rights in violation of Section 702 of the PERA and, therefore, is in violation of public policy.

As to the public policy exception, our Supreme Court "note[d] that not only is the public policy exception 'exceptionally narrow' in its own right, but it is also an exception to the essence test, which is itself a narrow exception to the doctrine that arbitration awards are final and binding." *Millcreek*, 210 A.2d at 1011 (internal citations omitted). Thus, "[a] baseline recognition that the public policy exception is a narrow exception to a narrow exception must guide a reviewing court's analysis." *Id.* Moreover, "application of the public policy exception has developed primarily in the context of employee discipline grievances." *Id.* at 1010.

10

When this Court determines whether the public policy exception to the essence test applies, our standard of review is *de novo*, and our scope of review is plenary. *See Philadelphia Hous. Auth. v. Am. Fed'n of State, Cnty. & Mun. Emps., Dist. Council 33, Loc. 934*, 52 A.3d 1117, 1121 (Pa. 2012).

Our Supreme Court has set forth a three-part test to determine if the public policy exception applies:

> First, a reviewing court must identify precisely what **remedy** the arbitrator imposed. Next, the court must inquire into whether that remedy implicates a public policy that is well[ ]defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. Finally, the reviewing court must determine if the arbitrator's award compels the employer to violate the implicated policy, given the particular circumstances and the factual findings of the arbitrator. . . . [T]he arbitrator's interpretation of the contract controls during this entire analysis, which is only triggered upon the reviewing court's determination that the award satisfies the essence test, and should be upheld absent a clear violation of public policy. The burden is on the party that opposes the award to demonstrate that it violates public policy.

*Millcreek*, 210 A.3d at 1011 (internal citations and quotation marks omitted) (emphasis in original). "Further, an arbitrator's award will violate public policy if it 'poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator.'" *PASSHE*, 98 A.3d at 15 (quoting *City of Bradford v. Teamsters Loc. Union No. 110*, 25 A.3d 408, 414 (Pa. Cmwlth. 2011)).

Here the remedy awarded by the arbitrator was directing the Township to reinstate the Signature 65 plan for all affected retired employees. *See* R.R. at 33a. Turning to the second part of the public policy test, we conclude that the remedy does not implicate a well-defined, dominant public policy. While Section 702 of the

11

PERA exempts managerial policy matters from CBAs, this Court has previously held that decisions related to insurance for employees are not managerial decisions exempted from collective bargaining under Section 702. *See Grandinetti*, 486 A.2d at 1044 n.9. The Township's attempt to distract from the fact that a change in bargained-for insurance coverage is not an inherently managerial decision by focusing on the budget implications of the bargain does not somehow transform its decision into a managerial one. For these reasons, we conclude that the arbitration award was rationally derived from the Relevant CBAs and does not violate Section 702 of the PERA or implicate the public policy exception. The Township, therefore, is not entitled to relief on this issue.

## IV. CONCLUSION

For the reasons set forth above, we affirm the trial court's order denying the Township's petition to vacate the arbitrator's award.

_____
STELLA M. TSAI, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hempfield Township, :
            Appellant :
:
      v. :
:
International Brotherhood of :
Teamsters, Local Union No. 30 : No. 166 C.D. 2025

# **O R D E R**

AND NOW, this 15th day of April, 2026, the order of the Court of Common Pleas of Westmoreland County is AFFIRMED.

_____
STELLA M. TSAI, Judge