John C. Ermel, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Department of Transportation, Respondent.

Argued November 16, 1983, before Judges WILLIAMS, JR., CRAIG and MACPHAIL, sitting as a panel of three.

*Robert Ufberg, Rosenberg & Ufberg,* for petitioner.

*Michael J. McCaney, Jr.,* Assistant Counsel, with him *Spencer A. Manthrope,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for respondent.

OPINION BY JUDGE CRAIG, Jauary 6, 1984:

John C. Ermel, Jr. appeals from an order of the State Civil Service Commission dismissing his appeal from the action of the Pennsylvania Department of Transportation (DOT) in furloughing Ermel from his position of Real Estate Specialist Supervisor, regular status.

We must determine whether there is substantial evidence to support the commission's findings, and if the commission erred as a matter of law in concluding that DOT properly followed the applicable furlough procedures.[1]

From 1969 to 1977, Ermel held the position of Real Estate Specialist IV (General) in DOT, and was

---

[1] We must affirm a Civil Service Commission order if it is in accordance with law, the findings of fact on which it is based are supported by substantial evidence, and the petitioner's constitutional rights have been observed. *Dadcy v. Bureau of Employment Security, Department of Labor and Industry,* 70 Pa. Commonwealth Ct. 513, 453 A.2d 702 (1982).

a member of the B-2 meet-and-discuss bargaining unit in American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME). The B-2 unit is comprised exclusively of first level supervisory employees, and is covered by a Memorandum of Understanding between DOT and AFSCME (the memorandum).

In June, 1977, the Executive Board of the Commonwealth issued a resolution amending the Commonwealth's Compensation Plan and effecting a reclassification of various positions in many Commonwealth departments, including DOT. The purpose of the reclassification was to eliminate the parenthetical designations in the old titles. As a result, Ermel's position as Real Estate Specialist IV (General) was reclassified as Real Estate Appraiser Supervisor, but he remained in the B-2 unit.

In August, 1977, DOT reclassified the Real Estate Appraiser Supervisor (REAS) position into five subcategories, resulting in Ermel's reclassification to Right-of-Way Administrator I (ROW I). DOT designated this new position as managerial, thus removing Ermel from the B-2 unit and any representation by AFSCME. Ermel did not challenge his removal from the bargaining unit at that point.

In June, 1978, DOT designated Ermel for furlough from his ROW I position. In lieu of furlough, DOT exercised Ermel's bumping rights on his behalf, and, according to furlough procedures set forth in the memorandum, Ermel bumped downward to the position of Real Estate Specialist Supervisor (RESS) and back into the B-2 bargaining unit. As a result, several DOT employees who held RESS positions at that time were bumped. They filed grievances challenging Ermel's right, under the memorandum, to bump into the RESS position.

At the fourth step of the grievance procedure, Carol Scott, Assistant Supervisor of the Commonwealth Grievance and Arbitration Procedure, Office of Administration, negotiated a pre-arbitration grievance settlement between the Commonwealth and AFSCME, denying Ermel the right to bump into the RESS position. The settlement was based on Scott's interpretation that, because Ermel had not previously held the RESS position, he could not bump into that position, under the procedures set forth in section 19 of the memorandum.[2] DOT reinstituted Ermel's 1978 furlough, and Ermel appealed to the Civil Service Commission.

The commission dismissed Ermel's appeal, concluding that the dispute turned on interpretation of the terms of the memorandum, which the commission viewed as outside its jurisdiction. The commission also rejected Ermel's argument that DOT had improperly designated ROW I as a management classification. This appeal followed.

The focus of Ermel's argument is that DOT improperly furloughed him in accordance with the pre-arbitration grievance settlement because: (1) the settlement was based on the erroneous determination that ROW I was managerial; (2) the settlement was based on the erroneous determination that Ermel had not formerly occupied the RESS position and (3) by its own terms, the settlement did not apply to him. Accordingly, Ermel argues, the settlement misapplied

---

[2] Section 19 of Recommendation No. 30 provides in part:
In the evennt of a furlough affecting employes who formerly occupied classifications within meet and discuss units . . . such employes shall first bump laterally or downward into the classification occupied immediately prior to leaving a meet and discuss unit . . . .

procedures set forth in the memorandum in contravention of his rights thereunder.

Initially, we must determine the proper jurisdiction for resolution of this dispute. The commission apparently felt that it normally is without jurisdiction to decide whether a public employee has been properly furloughed where a furlough issue is governed by a labor agreement.[3] However, the commission indicated that it does have jurisdiction where, as here, the petitioner alleges that procedures established under the labor agreement have been misapplied, because the misapplication would constitute a non-merit factor and thus render the furlough discriminatory under §905.1 of the Civil Service Act.[4]

As this court stated in *Scuoteguazza v. Pennsylvania Department of Transportation*, 28 Pa. Commonwealth Ct. 403, 368 A.2d 869 (1977):

> If the appellant alleges . . . that provisions of the Civil Service Act have not been complied with or have been violated, the matter is clearly one for the Commission's review. If the appellant alleges only that the terms of a labor agreement relative to furlough procedure have been violated, the case is clearly not one for the Civil Service Commission but for grievance and arbitration under the labor agreement.

*Id.* at 409, 368 A.2d at 872.

The question addressed by the commission in the present case thus narrowed to a determination of whether the settlement negotiated by Ms. Scott, under

---

[3] Under section 802 of the Civil Service Act, Act of August 5, 1941, P.L. 752, art. VIII, §802, *as amended*, 71 P.S. §741.802, where civil service employees are covered by a collective bargaining agreement, their employers must adhere to the furlough procedures set forth therein.

[4] Act of August 5, 1941, P.L. 752, art. IX, §905.1, *as amended*, 71 P.S. §741.905a.

which Ermel was furloughed, applied the proper procedure under the memorandum.

At issue are two seniority or bumping procedures. Section 19 of Recommendation No. 30 applies to employees who *formerly* occupied a position in the B-2 meet-and-discuss unit. The pre-arbitration settlement was based on application of that section. Section 7, on the other hand, applies to employees who *presently* occupy such a position. Ermel argues that the latter section should have been applied to his furlough. The commission's inquiry as to which procedure was applicable to Ermel thus centered on whether the ROW I position was or was not within the B-2 unit.

The commission correctly noted that Ermel was mistaken in relying on two Pennsylvania Labor Relations Board decisions arising from the same background as this case. *Pennsylvania Labor Relations Board v. Commonwealth,* 9 PPER §9299 (1978), and *Pennsylvania Labor Relations Board v. Commonwealth,* 12 PPER §12072 (1981). In those unfair labor practice cases, AFSCME challenged DOT's authority unilaterally to remove a classification of employees from a bargaining unit without an agreement with the union. The 1978 case held that DOT had no obligation to meet and discuss with AFSCME the reclassification. In the 1981 case, the Labor Relations Board found no substantial evidence on the record before it that the ROW I position was managerial; therefore, there was no premise for the allegation that DOT's action had usurped the board's authority, and the board dismissed the unfair labor practice charges.

Hence, neither of those cases is authority for the proposition urged by Ermel, that the ROW I position was not in fact managerial, but remained within the

B-2 bargaining unit. On the contrary, the Labor Relations Board has not addressed the issue of whether ROW I is managerial.

The commission correctly stated that it has no jurisdiction to determine the appropriateness of a bargaining unit, and is therefore bound by the presumption that DOT acted properly in designating ROW I as managerial. *Pettit v. Civil Service Commission,* 4. Pa. Commonwealth Ct. 124, 285 A.2d 223 (1971). Under §604 of the Pennsylvania Employes Relation Act,[5] it is the duty of the Pennsylvania Labor Relations Board to determine the appropriateness of a bargaining unit. *Pennsylvania Labor Relations Board v. Venango/Clarion Mental Health Center, Inc.,* 52 Pa. Commonwealth Ct. 341, 415 A.2d 1259 (1980).

The correct procedure for determining whether a certain job classification is properly included in a bargaining unit is to petition that board for unit clarification according to the procedures set forth in the board's regulations at 34 Pa. Code §95.23. *School District of Township of Millcreek v. Millcreek Education Association,* 64 Pa. Commonwealth Ct. 389, 440 A.2d 673 (1982). There is no evidence here that either DOT or AFSCME ever filed a petition for unit clarification with regard to the REAS series of job classifications, or the ROW I position, a subcategory of REAS.

There is evidence that, according to the labor board's records, ROW I has never been certified as being within any bargaining unit or meet-and-discuss unit covered by the memorandum of understanding between AFSCME and DOT. Without any union request for board clarification of the appropriate unit

---

[5] Act of July 23, 1970, P.L. 563, No. 195, art. VI, §604, 43 P.S. §1101.604.

438

for the ROW I classification, we are left with ROW I as managerial, pursuant to DOT's designation.

Because the commission concluded that ROW I was managerial, it regarded section 19 of recommendation No. 30 as the appropriate seniority or bumping procedure to be applied to Ermel's furlough. As such, the commission found no misapplication of seniority rights granted under the agreement, and thus no jurisdiction to determine whether the procedures themselves had been violated. However, we believe that the commission did have jurisdiction to address Ermel's further challenge to the pre-arbitration settlement as erroneously based on the determination that he had not formerly occupied the RESS position. This does not require an interpretation of the labor agreement or procedures set forth therein; rather, it requires only an evaluation of certain job classifications and their concomitant specifications, a determination which the Civil Service Commission should be peculiarly equipped to make. Because the commission failed to make any findings with regard to that issue, we will remand for further proceedings on it.

Ermel also contends that the pre-arbitration settlement is not applicable to him because it referred to employees moved to the ROW I classification as a result of the executive board resolution, whereas Ermel was reclassified as ROW I according to the administrative action of his own department.[6]

As Carol Scott admitted during the commission hearing, Ermel's argument is technically correct.

---

[6] The settlement provides in part:

Employees who were moved to the Right-of-Way Administrator I classification on August 17, 1977 as a result of an Executive Board Resolution will not have bumping rights to the Real Estate Specialist Supervisor classification.

However, there is substantial evidence establishing that the settlement agreement was specifically intended to apply to Ermel. Many of the grievances which were to be settled by the agreement were filed in response to his bumping down to the RESS position. According to Scott's testimony, the settlement agreement was formulated to resolve a central policy question posed by the grievances: "Was the Real Estate Specialist Supervisor class, as it is currently constituted, a class previously held for purposes of the collective bargaining agreement or memorandum by an employee who previously held the Real Estate Specialist IV (General) classification?"

We do not believe that the reference in the agreement to "Executive Board Resolution of August 17, 1977" should be strictly applied in clear contravention of the purpose of the agreement. Scott explained that the reason reference was made to the Executive Board Resolution was "to distinguish those people who moved on August 17, 1977 as opposed to anyone who moved after that date and actually held the Real Estate Specialist Supervisor class, [because] they would have bumping rights to that class."

We therefore conclude that the pre-arbitration grievance settlement was applicable to Ermel, and that there is substantial evidence of record to support the commission's finding that he was furloughed in accordance with the settlement. Furthermore, we affirm the commission's finding that DOT had followed the proper furlough procedure insofar as AFSCME has not filed for unit clarification of the ROW I position designated by DOT as managerial. However, we remand for further findings with regard to whether Ermel previously occupied the RESS position.

440 

ORDER

Now, January 6, 1984, the order of the State Civil Service Commission, dated August 17, 1982, is affirmed in part and remanded in part for further proceedings in accordance with this opinion.

Jurisdiction relinquished.