**PSSU, LOCAL 668 OF SEIU, AFL–CIO, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 18, 1999.

Decided Oct. 20, 1999.

---

Bruce M. Ludwig, Philadelphia, for petitioner.

John B. Neurohr, Harrisburg, for respondent.

Before KELLEY, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

KELLEY, Judge.

PSSU, Local 668 of SEIU, AFL–CIO (Union) appeals from the final order of the Pennsylvania Labor Relations Board (Board) dismissing its exceptions to the proposed decision and order of a Hearing Examiner, and making the proposed decision and order absolute and final. In the proposed decision and order, the Hearing Examiner concluded that the Commonwealth of Pennsylvania (Employer) did not engage in unfair labor practices as prohibited by sections 1201(a)(1), (3), (5), (7) and (9) of the Public Employe Relations Act (PERA)[1] by unilaterally withdrawing its recognition of the Union as the exclusive representative of a meet and discuss unit that included Workers' Compensation Judges (WCJs) employed by Employer. We affirm.

---

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.1201(a)(1), (3), (5), (7) & (9). Section 1201 of the PERA states, in pertinent part:

(a) Public employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

\* \* \*

(3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization.

\* \* \*

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

\* \* \*

(7) Violating any of the rules and regulations established by the board regulating the conduct of representative elections.

\* \* \*

(9) Refusing to comply with the requirements of "meet and discuss".

On May 23, 1977, pursuant to section 603(c) of the PERA[2], the Union filed a petition for representation with the Board alleging that it represented 30% or more of a unit of employees composed of the Workmen's Compensation Referees (Referees), as defined by section 422 of the

**2.** Section 603(c) of the PERA states, in pertinent part:

> (c) If a public employer refuses to consent to an election, the party making the request may file a petition with the board alleging that thirty per cent or more of the public employes in an appropriate unit wish to be exclusively represented for collective bargaining purposes by a designated representative... If it deems the allegations in the petition to be valid and the unit to be appropriate it shall order an election...

43 P.S. § 1101.603(c).

**3.** Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 152. Section 442 of the Administrative Code of 1929 states, in pertinent part:

> There shall be, in the Department of Labor and Industry, as many Workmen's Compensation Referees, as, in the judgment of the Secretary of Labor and Industry, shall be necessary to properly administer the workmen's compensation laws of this Commonwealth. Such referees shall be appointed by and subject to the direction and control of the Secretary of Labor and Industry. The Secretary of Labor and Industry shall assign them to the various workmen's compensation districts, and shall prescribe from time to time the duties to be performed by them.
>
> All positions as Workmen's Compensation Referees now existing or hereafter created shall be in the classified service in conformity with the act of August 5, 1941 (P.L. 752, No. 286), known as the "Civil Service Act"...

**4.** "R.R." refers to the reproduced record filed in this case.

**5.** Section 301(6) of the PERA defines "supervisor", in pertinent part, as follows:

> [A]ny individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employes or responsibly to direct them or adjust their grievances; or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in

Administrative Code of 1929[3], who were employed by Employer. R.R.[4] at 69a–75a. On February 23, 1978, the Board issued an Order and Notice of Pre–Election Conference in which it determined that the Referees were "first level supervisors"[5], composed an appropriate "meet and discuss" unit under the PERA[6,7], and ordered a

> nature but calls for the use of independent judgment.

43 P.S. § 1101.301(6). In addition, section 301(19) of the PERA defines "first level supervisors" as "[t]he lowest level at which an employe functions as a supervisor." 43 P.S. § 1101.301(19).

**6.** Section 604(5) of the PERA provides:

> The board shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the board shall:...
>
> (5) Not permit employes at the first level of supervision to be included with any other units of public employes but shall permit them to form their own separate homogenous units. In determining supervisory status the board may take into consideration the extent to which supervisory and nonsupervisory functions are performed.

43 P.S. § 1101.604(5).

**7.** As we have previously noted:

> The duties placed upon the [public employer] with regard to its first-level supervisory employees are delineated in Section 704 of the PERA, which states:
>
>> Public employers shall not be required to bargain with units of first level supervisors or their representatives but shall be required to meet and discuss with first level supervisors or their representatives, on matters deemed to be bargainable for other public employes covered by this act.
>
> 43 P.S. § 1101.704. Section 301(17) of PERA, 43 P.S. § 1101.301(17), defines the concept of "meet and discuss" as "the obligation of a public employer upon request to meet at reasonable times and discuss recommendations submitted by representatives of public employes: Provided, That any decisions or determinations on matters so discussed shall remain with the public employer and be deemed final on any issue or issues raised." Meet and discuss sessions exist as a device to permit input or recommendations from public employees on policy matters affecting wages, hours and terms and conditions of employment so as to assist the public employer in ultimately mak-

pre-election conference to determine matters relating to the election of the Union as the exclusive representative of the Referees *Id.* Following the election, on March 30, 1978, the Board issued a Nisi Order of Certification in which it certified the Union as the exclusive representative of the Referees for the purpose of meeting and discussing with respect to wages, hours, and

> ing its disposition of the issues in question. *Pennsylvania Labor Relations Board v. Association of Pennsylvania State College and University Faculties/Pennsylvania Association of Higher Education (APSCUF/PAHE),* [24 Pa.Cmwlth. 337, 355 A.2d 853 (Pa. Cmwlth.1976) ].
>
> *Independent State Store Union v. Pennsylvania Labor Relations Board,* 119 Pa.Cmwlth. 286, 547 A.2d 465, 467 (1988).

8. On October 24, 1978, the Board issued a Final Order in which it sustained Employer's exceptions to the Nisi Order of Certification to the extent that it excluded the District Manager of the Eastern District from the unit. *See* R.R. at 80a–82a.

9. In particular, the Board defined the "meet and discuss" unit as follows:

> UNIT: In a subdivision of the employer unit comprised of all full-time and regular part-time Workmen's Compensation Referees; *and excluding* non-professional employes, supervisory employes, *management level employes,* confidential employes and guards *as defined in the [PERA].*

R.R., p. 78a (emphasis added).

In turn, section 301 of the PERA defines "management level employe" as "[a]ny individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof and shall include all employes above the first level of supervision." 43 P.S. § 1101.301(16). In addition, section 301 of the PERA removes management level employees from its provisions by excluding them from the definition of "public employe" or "employe". 43 P.S. § 1101.301(2).

10. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626. In particular, Act 57 added sections 1401 through 1406 to the Act. The added sections 1401, 1403, 1404 and 1406 of the Act read, in pertinent part, as follows:

§ 2501.  Office of Adjudication; workers' compensation judges

terms and conditions of employment. R.R. at 76a–79a.[8] Specifically excluded from this "meet and discuss" unit were "management level employes" as defined under the PERA. *Id.*[9]

On June 24, 1996, the General Assembly enacted Act 57 of 1996 which amended a number of provisions of the Pennsylvania Workers' Compensation Act (Act).[10] In-

(a) There is created within the department an office to be known as the Office of Adjudication.

(b) The secretary shall appoint as many qualified and competent workers' compensation judges as necessary to conduct matters under this act.

(c) The secretary shall set normal working hours for workers' compensation judges. During those hours, workers' compensation judges shall devote full time to their official duties and shall perform no work inconsistent with their duties as workers' compensation judges. Workers' compensation judges shall not engage in any unapproved activities during normal working hours...

(d) Workers' compensation judges shall be afforded employment security as provided by the act of August 5, 1941 (P.L. 752, No. 286), known as the "Civil Service Act".

(e) Compensation for workers' compensation judges shall be established by the Executive Board.

(f) The secretary shall develop and require all workers' compensation judges to complete a course of training and instruction in the duties of their respective offices and pass an examination prior to assuming office. The course of training and instruction shall not exceed four weeks in duration and shall consist of a minimum of forty hours of class instruction in medicine and law.

(g) The secretary shall develop a continuing professional development plan for workers' compensation judges which shall require the annual completion of twenty hours of approved continuing professional development courses.

(h) The secretary may adopt additional rules to establish standards and procedures for the evaluation, training, promotion and discipline of workers' compensation judges.

§ 2503.  Qualifications of workers' compensation judges

Workers' compensation judges shall be management level employes and must meet the following minimum requirements:

(1) Be an attorney in good standing before the Supreme Court.

cluded within these amendments, Act 57 added section 1403 to the Act which states, *inter alia,* that WCJs[11] "[s]hall be management level employes..." 77 P.S. § 2503. As a result of these changes, Employer notified both the Union and the WCJs that it would refuse to recognize the WCJs as part of the certified "meet and discuss" unit, and the Union as their exclusive representative, from the effective date of the amendments of Act 57.

Based on Employer's actions, on August 22, 1996 the Union filed a Charge of Unfair Practices with the Board. The Charge of Unfair Practices alleged that Employer had violated sections 1201(a)(1), (3), (5), (7), and (9) of the PERA by refusing to recognize the Union as the exclusive representative of the WCJs' "meet and discuss" unit. R.R. at 4a–7a.

A hearing was conducted before the Hearing Examiner on May 5, 1997. On November 10, 1997, the Hearing Examiner issued a Proposed Decision and Order in which he determined that Employer did not commit any unfair labor practices as alleged in the Charge, and dismissed the Charge. R.R. at 21a–27a.

(2) Have five years of workers' compensation practice before administrative agencies or equivalent experience.

(3) Complete the course of training and instruction and pass the examination under section 1401(f).

(4) Meet the annual continuing professional development requirement established by the secretary under section 1401(g).

(5) Conform to other requirements as established by the secretary.

§ 2504. Code of ethics; removal of workers' compensation judges

(a) A workers' compensation judge shall conform to the following code of ethics:

(1) Avoid impropriety and the appearance of impropriety in all activities.

(2) Perform duties impartially and diligently.

(3) Avoid ex parte communications in any contested, on-the-record matter pending before the department.

(4) Abstain from expressing publicly, except in administrative disposition or adjudication, personal views on the merits of an adjudication pending before the department and require similar abstention on the part of department personnel subject to the workers' compensation judge's direction and control.

(5) Require all staff and personnel subject to the workers' compensation judge's direction and control to observe the standards of fidelity and diligence that apply to a workers' compensation judge.

(6) Initiate appropriate disciplinary measures against department personnel subject to the workers' compensation judge's direction and control for unethical conduct.

(7) Disqualify himself from proceedings in which impartiality may be reasonably questioned.

(8) Keep informed about the personal and fiduciary interests of himself and his immediate family.

(9) Regulate outside activities to minimize the risk of conflict with official duties. A workers' compensation judge may speak, write or lecture, and reimbursed expenses, honorariums, royalties or other money received in connection therewith shall be disclosed annually. A disclosure statement shall be filed with the secretary and the State Ethics Commission and shall be open to inspection by the public during the normal business hours of the department and the commission during the tenure of the workers' compensation judge.

(10) Refrain from direct or indirect solicitation of funds for political, educational, religious, charitable, fraternal or civic purposes: Provided, however, That a workers' compensation judge may be an officer, a director or a trustee of such organization.

(11) Refrain from financial or business dealings which would tend to reflect adversely on impartiality. A workers' compensation judge may hold and manage investments which are not incompatible with the duties of office.

(12) Conform to additional requirements as the secretary may prescribe.

(13) Uphold the integrity and independence of the workers' compensation system.

(b) Any workers' compensation judge who violates the provisions of clause (a) shall be removed from office...

§ 2506. Current workers' compensation judges

Individuals who are currently serving as workers' compensation judges shall continue to serve as workers' compensation judges, subject to sections 1401(c) and 1404.

77 P.S. §§ 2501, 2503, 2504, 2506.

11. By Act 44 of 1993, section 401 of the Act was amended to redesignate "workmen's compensation referees" as "workers' compensation judges". *See* 77 P.S. § 701.

On November 21, 1997, the Union filed exceptions to the Proposed Decision and Order with the Board. R.R. at 28a–32a. On August 18, 1998, the Board issued a Final Order dismissing the Union's exceptions and making the proposed decision and order of the Hearing Examiner absolute and final. R.R. at 33a–36a. The Union then filed the instant appeal in this Court.[12,13]

In this appeal, the Union claims [14]: (1) the Board erred in determining that Employer's unilateral withdrawal of recognition is not an unfair labor practice under the PERA; (2) the Board's determination that WCJs are management level employees is not supported by substantial evidence because it failed to examine the work duties and responsibilities of WCJs in making this determination; (3) the Board erred in determining that the designation of WCJs as management level employees in section 1403 of the Act applied to WCJs who held this position prior to its enactment; and (4) the Board's determination that WCJs are management level employees, thereby eliminating their "meet and discuss" rights under the provisions of the PERA, violates the United States and the Pennsylvania Constitutions.

■ The Union first claims that the Board erred in determining that Employer's unilateral withdrawal of recognition is not an unfair labor practice under the PERA. In particular, the Union claims that if Employer believed that the existing certified unit of WCJs was no longer an appropriate unit in light of the enactment of Act 57, Employer should have filed a unit clarification petition with the Board pursuant to 34 Pa.Code § 95.23.[15] The Union asserts that "[t]he unilateral declaration by the employer that the [WCJs] were management level employees no longer eligible for union representation is a wholesale breach of the procedures and protections mandated by the Public Em-

---

12. By notice filed October 1, 1998, Employer has intervened in this appeal.

13. Our scope of review of the Board's final order is limited to determining whether the Board's factual findings are supported by substantial evidence and whether its legal conclusions are reasonable, and not arbitrary, capricious, or incorrect as a matter of law. *Moshannon Valley School District v. Pennsylvania Labor Relations Board,* 142 Pa.Cmwlth. 270, 597 A.2d 229 (1991), *petition for allowance of appeal denied,* 530 Pa. 662, 609 A.2d 170 (1992).

14. In the interest of clarity, we consolidate and reorder the claims raised by the Union in this appeal.

15. Section 95.23 of Title 34 of the Pennsylvania Code states:

§ 95.23. Unit clarification.

(a) If no question of representation exists, a petition for clarification of an existing bargaining unit may be filed by the collective bargaining representative or by the public employer.

(b) A petition for unit clarification shall contain the following:

(1) The name of the employer and the name of the collective bargaining representative.

(2) The address of the employer.

(3) A description of the present bargaining unit and, if the bargaining unit is certified, an identification of the existing certification.

(4) A description of the proposed clarification.

(5) The names and addresses of other persons or employe organizations who claim to represent any employes affected by the proposed clarifications and brief descriptions of the contracts, if any, covering those employes.

(6) The number of employes in the present bargaining unit and in the unit as proposed under the clarification.

(7) The job classifications of employes as to whom the issue is raised and the number of employes in each classification.

(8) A statement by petitioner setting forth the reasons for requesting the clarification.

(9) The name, affiliation if any, and address of the petitioner.

(10) Other relevant facts.

(c) When unit clarification is jointly requested by the collective bargaining representative and the public employer, the Board Representative will have the authority to issue an appropriate order of unit clarification.

34 Pa.Code § 95.23

ployee Relations Act." Brief for Appellant, p. 13.

We have previously noted that the purpose of the unit clarification petition procedure under the PERA is to determine whether certain job classifications are properly included in a bargaining unit based on the actual functions of the job. *Fraternal Order of Police v. Pennsylvania Labor Relations Board*, 695 A.2d 926 (Pa. Cmwlth.1997), *aff'd*, 557 Pa. 586, 735 A.2d 96 (1999), *School District of the Township of Millcreek v. Millcreek Education Association*, 64 Pa.Cmwlth. 389, 440 A.2d 673 (1982); *Erie County Area Vocational-Technical School v. Pennsylvania Labor Relations Board*, 52 Pa.Cmwlth. 388, 417 A.2d 796 (1980). *See also Ermel v. Department of Transportation*, 79 Pa. Cmwlth. 431, 470 A.2d 1061, 1064 (1984). ("The correct procedure for determining whether a certain job classification is properly included in a bargaining unit is to petition [the Board] for unit clarification according to the procedures set forth in the [B]oard's regulations at 34 Pa.Code § 95.23.").

In support of this claim, the Union cites cases in which the Board has held that an employer committed an unfair labor practice where it had either refused to bargain with employees not specifically excluded from a certified unit, or had unilaterally excluded a new position from a certified unit. However, in this case, it was not alleged that Employer either altered the job duties of WCJs or unilaterally changed the classification of WCJs. Rather, it was alleged that Employer committed an unfair labor practice in this case by implementing the provisions of section 1403 of the Act in which the General Assembly designated WCJs as "management level employes", a classification that the Board specifically excluded from the existing certified unit. As there was no allegation that Employer altered the classification of WCJs or the existing unit as defined by the Board, it is clear that the Board did

not err in determining that Employer did not commit an unfair labor practice in this case. The Union's claim to the contrary is meritless.

■ The Union next claims that the Board erred in failing to examine the work duties and responsibilities of WCJs in determining that WCJs are management level employees. In particular, the Union alleges that an employer's unilateral classification of a position is not determinative, and the Board must analyze the duties of the WCJ position in determining whether they should be designated as "management level employes" as defined in section 301(16) of the PERA.

Again, this claim ignores the facts underlying the instant appeal. In this case, the General Assembly designated the WCJs to be "management level employes" under the provisions of section 1403 of the Act. Employer did nothing to change the classification of the WCJs or alter their duties in any manner after the Board certified the unit.

It is true that, in most circumstances, an examination of the duties of an employee's position is made prior to a determination of whether or not such employee is a "management level employe", as that term is defined in section 301(16) of the PERA. *See, e.g., School District of Philadelphia v. Pennsylvania Labor Relations Board*, 719 A.2d 835 (Pa.Cmwlth.1998) (Board's determination that employees in the position of coordinator, family resource network were neither management nor supervisory level was proper where there was no substantial evidence to show that they meaningfully participated in any significant policy formation or took concrete measures to ensure the implementation of the School District's policies.).

However, because the General Assembly chose to designate WCJs as management level employees under the provisions of

section 1403 of the Act, it obviated the need to examine the particular duties of the position as both the Board and this Court are powerless to alter this designation. *See American Federation of State, County and Municipal Employees v. Pennsylvania Labor Relations Board,* 140 Pa.Cmwlth. 352, 593 A.2d 4 (1991) (Although Waterways Conservation Officers are authorized to act as police under sections 901 and 902 of the Fish and Boat Code, 30 Pa.C.S. §§ 901, 902, where the General Assembly specifically expressed in section 304(b) of the Fish and Boat Code, 30 Pa.C.S. § 304(b), that these officers are not to be afforded Act 111 rights accorded other "policemen" this legislative intent controls and this Court is powerless to overrule this legislative judgment.) [16]

■ The Union next claims that the Board erred in determining that the designation of WCJs as "management level employes" in section 1403 of the Act applied to WCJs who held this position prior to its enactment. In particular, the Union contends that the "grandfather clause" of section 1406 of the Act precludes the application of the designation in section 1403 of the Act. As noted above, section 1406 of the Act provides that "[i]ndividuals who are currently serving as workers' compen-

sation judges shall continue to serve as workers' compensation judges, subject to sections 1401(c) and 1404." 77 P.S. § 2506. Because section 1406 does not make reference to section 1403, the Union argues that the rules of statutory construction require a finding that the provisions of section 1403 do not apply to WCJs employed prior to its enactment.

In rejecting the Union's claim, the Hearing Examiner stated the following:

[N]oting that Section 1403 of Act 57 of 1996 is not one of the listed sections which grandfathered judges are subject to and relying on the rule of statutory construction that "[e]xceptions expressed in a statute shall be construed to exclude all others", 1 Pa.C.S. § 1924, [the Union] claims that only newly hired judges are subject to Section 1403 of Act 57 of 1996, which, as noted above, requires that judges "shall be management level employes" and further requires, among other things, that they "[b]e an attorney in good standing before the Supreme Court." 77 P.S. § 2503(1). In the words of [the Union], "[i]f the existing judges do not have to be attorneys, then it follows that they do not have to be considered management level employees." (brief at 10).

**16.** As a corollary to this claim, the Union asserts that because section 1403 of the Act makes no reference to the PERA, the Board erred in determining that the General Assembly's designation of WCJs as "management level employes" in section 1403 excluded them from the "meet and discuss" provisions of the PERA by virtue of section 301(16) of the PERA. However, it is a tenet of statutory construction that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning ... shall be construed according to such peculiar and appropriate meaning..." Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903(a); *Flaherty v. Pittsburgh School District,* 660 A.2d 218 (Pa.Cmwlth.1995); *Doyle Equipment Company v. Commonwealth,* 117 Pa.Cmwlth. 38, 542 A.2d 644 (1988). In addition, it is also a tenet of statutory construction that "[s]tatutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things", and "[s]tatutes in pari materia shall be construed together, if possible, as one statute." Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932; *Hutskow v. Washowich,* 156 Pa. Cmwlth. 655, 628 A.2d 1202, *petition for allowance of appeal denied,* 536 Pa. 633, 637 A.2d 293 (1993); *Black v. Billy Penn Corp.,* 72 Pa.Cmwlth. 628, 457 A.2d 192 (1983). Thus, it was entirely appropriate for the Board to construe the phrase "management level employe" as that phrase is used in Act 57 relating to the terms of conditions of the employment of WCJs in conjunction with the provisions of the PERA relating to the terms and conditions of employment of public employees.

[The Union]'s reading of Sections 1403 and 1406 of Act 57 of 1996 violates another rule of statutory construction – "the General Assembly does not intend a result that is absurd…" 1 Pa.C.S.A. § 1922(1). It makes no sense that the General Assembly would limit management level status to newly hired judges just because they are attorneys; rather, it seems more reasonable that the General Assembly would treat referees who became judges and newly hired judges the same as far as their unit status is concerned because, regardless of whether or not they are attorneys, their job duties are the same.

[The Union] goes on to argue that reading Sections 1403 and 1406 of Act 57 of 1996 contrary to its position violates the rule of statutory construction that "the General Assembly intends to favor the public interest as against any private interest." 1 Pa.C.S.A. § 1922(3). According to [the Union], the public interest in having harmonious employe-employer relations is favored under its reading of those sections. [The Union] does not point out how any private interest is favored by reading Sections 1403 and 1406 of Act 57 of 1996 contrary to its position, however, so there is no basis to its argument in this regard.

Proposed Decision and Order, pp. 5–6.

We agree with this reasoning. The Union cites no authority to support the proposition that the General Assembly intended to treat those WCJs hired after the enactment of Act 57 differently from those holding that position prior to its enactment. It is clear that, in enacting the provisions of section 1403 of the Act, the General Assembly removed all WCJs from the provisions of the PERA and outlined the general terms and condition of their employment. It would be illogical to conclude that the General Assembly intended to deny the PERA's "meet and discuss" rights to only those WCJs hired

after the enactment of section 1403 when both new hires and existing WCJs are both afforded the protections of the Civil Service Act, work the same number of hours, perform the same job duties, and are held to the same ethical standards. In short, the Union's proposed reading of the provisions of the Act would result in an unnatural and strained interpretation of its provisions, and will not be adopted in order to reverse the Board's determination in this case. *See, e.g., Commonwealth ex rel. Paulinski v. Isaac,* 483 Pa. 467, 397 A.2d 760 (1979), *cert. denied,* 442 U.S. 918, 99 S.Ct. 2841, 61 L.Ed.2d 286 (1979) (When interpreting constitutional provisions relating to the "grandfathering" of the then sitting City of Pittsburgh magistrates, and imposing new educational requirements and prohibited activities, the provisions should not be read in a strained or technical manner but should be given an ordinary and natural interpretation.)

Finally, the Union claims that the Board's determination that WCJs are management level employees, thereby eliminating their "meet and discuss" rights under the provisions of the PERA, violates the United States and the Pennsylvania Constitutions. In particular, the Union contends that the provisions of the Act, as applied to its members, violates: (1) their due process and equal protection rights under the United States and Pennsylvania Constitutions; (2) their right of free association under the United States and Pennsylvania Constitutions; and (3) the prohibition precluding the enactment of "special legislation" under Article III, Section 32 of the Pennsylvania Constitution. However, these claims will not be addressed on the merits in this appeal.

Although the Union raised these claims before the Hearing Examiner and the Board, both the Hearing Examiner and the Board properly determined that the Board was without jurisdiction to consider

constitutional claims. *See, City of Philadelphia v. District Council 33,* 528 Pa. 355, 598 A.2d 256 (1991). It must be remembered that, in the instant appeal, we are reviewing the Board's determination that Employer did not commit any unfair labor practices under the provisions of the PERA. In conducting our appellate review of the Board's Final Order, we have determined that "[i]ts legal conclusions are reasonable, and not arbitrary, capricious, or incorrect as a matter of law." *Moshannon Valley School District.* Therefore, we will not decide these constitutional issues. *See e.g., Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983) (The Supreme Court should not decide a constitutional question unless absolutely required to do so.); *Mt. Lebanon v. County Board of Elections of Allegheny County,* 470 Pa. 317, 368 A.2d 648 (1977) (same).[17]

Accordingly, the order of the Board is affirmed.

### *O R D E R*

AND NOW, this 20th day of October, 1999, the order of the Pennsylvania Labor Relations Board, dated August 18, 1998 at Case No. PERA–C–96–410–E, is affirmed.

---

17. Even though these claims will not be addressed on the merits in this appeal of the Board's Final Order, that is not to say that they could not be addressed in an appropriate proceeding before the appropriate tribunal. *See, e.g., City of Philadelphia; Hollinger v.* *Department of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976); *Pennsylvania State Lodge, Fraternal Order of Police v. Department of Labor and Industry,* 692 A.2d 609 (Pa. Cmwlth.1997), *aff'd,* 550 Pa. 549, 707 A.2d 1129 (1998).